No. 41,842

The Federal Land Bank of Wichita, a Corporation of Wichita, Kansas, *Appellant,* v. Board of County Commissioners of the County of Kiowa, State of Kansas; Ben H. Paxton, Sheriff; Alice Cronic, County Treasurer; and Eunice Rich, Clerk of the District Court; The State of Kansas, Intervener, *Appellees.*

(354 P. 2d 679)

Opinion filed August 4, 1960.

*Edw. H. Jamison,* of Wichita, argued the cause, and *Steve W. Church,* of Greensburg, and *Wm. G. Plested, Jr.,* of Wichita, were with him on the brief for the appellant.

*Robert C. Londerholm,* Assistant Attorney General, argued the cause, and *John Anderson, Jr.,* Attorney General, *A. K. Stavely,* Assistant Attorney General,

and *Martin A. Aelmore,* County Attorney, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRICE, J.: The question in this case is whether, under the facts of record, certain personal property consisting of a royalty interest derived from an oil and gas lease owned by the Federal Land Bank of Wichita, a federal instrumentality (hereafter referred to as the bank), is subject to taxation by the state or a political subdivision thereof.

The trial court held that it is subject to personal property tax, and the bank has appealed.

The background of the matter is this:

In 1922 the bank made a loan of $3,000 and as security therefor took a mortgage on the quarter section of land in Kiowa county here involved. In 1941 the loan became in default and the bank brought a foreclosure action. On October 10, 1941, judgment was rendered in favor of the bank against the owners in the amount of $3,306.79, with interest at six per cent, and a decree of foreclosure was entered foreclosing the mortgage and awarding costs of suit to the bank. In due time an order of sale was issued, and on November 24, 1941, the bank bid in the land at sheriff's sale for the sum of $3,324.37, such sum being the amount of the judgment, interest and costs, less a credit of $150 arising from a cancellation of the stock issued in connection with the loan. The sale was duly confirmed, and on May 25, 1943, the bank received a sheriff's deed to the premises. During the running of the period of redemption the bank paid no taxes or insurance on the property.

In September, 1942, Richard P. Janson, the present owner of the land, contracted to buy it for $3,500, and under this contract he paid the interest on the unpaid principal balance. On August 8, 1946, the bank conveyed the property to him by a warranty deed for a total consideration of $3,500. In the deed of conveyance to Janson the bank reserved an undivided one-half interest in the mineral estate for a period of twenty years from and after May, 1943, and for so long thereafter as minerals are produced on the premises or are being developed or operated. As of the date of conveyance there was no mineral production or prospect thereof from the premises or from land in that vicinity.

It also is to be noted that at the time the bank conveyed the land in question to Janson, reserving the mineral estate, it had fully

recouped its financial loss suffered by reason of foreclosure of its mortgage.

In 1955 a pool of gas was discovered and production of oil and gas was begun, and the land in question is now unitized for oil and gas production purposes with an adjoining quarter section wherein is located a gas well, the source of the oil and gas from which the bank's royalty interest, here sought to be taxed, is derived.

On November 9, 1944, the bank gave a ten-year oil and gas lease to the property, and again on June 3, 1955, the bank granted another oil and gas lease covering it. As of the date of trial of this action, in the spring of 1959, the bank had derived $960 in rents and bonuses from the two leases, and $2,017.20 in royalties under the second lease. During the period from 1947 through 1958 the bank paid a total of $33.15 in real property taxes upon its interest in the mineral estate.

In 1957 Kiowa county, by and through its taxing officials, levied and assessed a personal property tax in the amount of $46.81 against the interest of the bank in the oil and gas lease and upon the royalty interest derived therefrom for that year. This tax was levied pursuant to the provisions of G. S. 1949, 79-329 to 79-334, which, among other things, provide that for the purpose of valuation and taxation oil and gas leases are declared to be personal property and shall be assessed and taxed as such to the owner thereof.

On August 29, 1958, the bank, under the provisions of G. S. 1949, 60-1121, brought this action to enjoin the levy and collection of the tax, alleging that it is wholly exempt by law from payment of any and all taxes, federal, state, municipal and local, except such taxes as may lawfully be levied and assessed against it upon real estate held, purchased or lawfully acquired by it, as provided by Title 12, U. S. C. A., § 931.

The attorney general, on behalf of the state, was permitted to intervene as a party defendant, and, among other things, the answers of defendants alleged that the bank's authority is strictly circumscribed by the federal statutes under which it was created and exists; that the primary function of the bank is to provide a rural credit system by which credit should be extended to persons engaged in agriculture; that in enacting Title 12, U. S. C. A., § 931, congress did not intend to and did not exempt from taxation personal property acquired or held by a federal land bank in excess of its statutory powers, nor is such personal property impliedly exempted

from taxation by the federal constitution; that the bank has no power or authority, either express or implied, to enter upon and continue original speculative enterprises and to hold real property interests over protracted periods of time for the purpose of speculating in future profits, rents or royalties that might be obtained from mineral production thereon, and that the written regulation of the Farm Credit Administration, upon which the bank relies for its authority to hold the property in question beyond a period of five years, is wholly void and of no effect.

Upon the issues thus joined the parties proceeded to trial. In denying the injunction sought by the bank and in rendering judgment for defendants and holding the property to be subject to personal property tax, the trial court made findings of fact. Although repetitious in some respects of what already has been related of the factual background, we nevertheless quote them in full:

"1. The Federal Land Bank of Wichita, plaintiff herein, is a corporation duly authorized and organized under an Act of Congress.

"2. In 1922 plaintiff made a mortgage loan of $3000 upon the land involved in this case, being the Northeast quarter of Section 21, Township 29, Range 18 in Kiowa County, Kansas. Said loan being in default in 1941 plaintiff commenced an action to foreclose said mortgage in the District Court of said County, being Case No. 4444 in said Court.

"3. Thereafter on October 10, 1941, judgment was rendered in said action in favor of said bank and against the defendant owners of the sum of $3,306.79 with interest at six percent, and for foreclosure of said mortgage and costs of suit. In due time an order of sale was issued and on November 24, 1941, plaintiff bid in said land at Sheriff's sale for the sum of $3,234.37, being the amount of the judgment, interest and costs, less a credit of $150.00 by cancellation of the stock issued in connection with said loan. Said sale was duly confirmed, and on May 25, 1943, plaintiff received a Sheriff's deed for said premises. During the running of the period of redemption, plaintiff paid no taxes or insurance on said property.

"4. On January 1, 1943, the Farm Credit Administration promulgated the following regulation:

" 'Holding mineral rights for more than 5 years. In cases where, in connection with a sale of bank-owned real estate,

" 'the bank has retained royalty or other rights in or to minerals, and desires to hold such rights for a period in excess of 5 years, it is not considered that the bank has both "title and possession" of real estate within the meaning of section 13 (Fourth [b]) of the Federal Farm Loan Act (12 U. S. C. 781 [4] [b]). However, retention of such minerals and mineral rights for periods in excess of 5 years, when in the banker's opinion it is in the bank's interest to do so, has the approval of the Administration.' (Code of Federal Regulations, Title 6, Par. 10.64.)

"On June 16, 1941, the plaintiff's Board of Directors had passed the following resolution:

"'WHEREAS, this Board has heretofore ratified and confirmed reservations by The Federal Land Bank of Wichita of minerals or mineral rights in connection with sales of its acquired real estate; and

"'WHEREAS, this Board feels that ordinarily it is to the best interests of the Bank to reserve an interest in minerals or mineral rights in connection with sales of its acquired real estate in order to realize as much as possible from such sales, and so retain such minerals or mineral rights for such periods of time as it is deemed to be for the Bank's best interests,

"'Now, THEREFORE, be it resolved that the Executive Committee of this Bank is hereby authorized and directed to reserve such interest in the minerals or mineral rights lying in, upon or under real estate sold by it as in the opinion of such Committee is deemed to be to the best interests of the Bank so to do, and to retain such minerals and mineral rights for such periods as may be permissible under the Farm Loan Act as amended, and the rules and regulations promulgated thereunder, and as in the opinion of such Committee are in the Bank's best interests.'

"5. In September, 1942, Richard P. Janson contracted to buy the land for $3,500 and he and his wife subsequently took title to the land by a special corporation warranty deed dated August 8, 1946, reciting a consideration of $3,500 wherein the Federal Land Bank reserved an undivided one-half interest in the mineral estate for a period of twenty years from and after May, 1943, and so long thereafter as minerals are produced on the premises or being developed or operated. In 1946, when plaintiff conveyed to Janson and reserved the one-half interest in the mineral estate, it had recouped its loss suffered by reason of the foreclosure of its mortgage on the real estate.

"6. At the time plaintiff reserved the one-half mineral interest in the land there was no mineral production or immediate prospect thereof from the premises or from lands in the vicinity. The land is now unitised for oil and gas production purposes with the Northwest Quarter of Section 21, wherein lies the Pardoe gas well, the source of the gas and oil from which plaintiff's royalty interest is derived. The Pardoe well draws from the Nichols-Mississippian zone pool of gas which was first discovered in 1955.

"7. On November 9, 1944, the plaintiff gave a ten year oil and gas lease to the property to V. C. Rouse. On June 3, 1955, the plaintiff granted the Gulf Oil Corporation a second oil and gas lease to the property. At the time of trial of the present case, plaintiff had derived $960.00 in rents and bonuses from these two leases and, in addition, $2,017.20 in royalties under the second lease. From 1947 through 1958, inclusive, plaintiff has paid a total of $33.15 in real property taxes upon its interest in the mineral estate.

"8. That the defendant, County of Kiowa, by and through its various agencies levied and assessed certain personal property taxes against the interests of the plaintiff in an oil and gas well and on oil and gas produced from a drilling unit of which plaintiff's mineral reserve became a component part; said taxes were assessed for the year 1957, pursuant to G. S. 1949, 79-329 to 334."

For its conclusions of law the trial court held:

"1. The Federal Land Bank of Wichita has only those powers granted it by the federal statutes under which it was created.

"2. The Federal Land Bank of Wichita has no power, under the Federal Statutes, to speculate or make profits out of land taken by foreclosure.

"3. The Federal Land Bank has no power, under Federal Statutes, to retain title to foreclosed real estate after such time as it has fully recouped its loss sustained by reason of the foreclosed mortgage transaction, and the retention of title in such circumstances is beyond the legal authority of the Bank.

"4. The Federal Land Bank of Wichita holds title and possession of real property within the meaning of Title 12, United States Code, Par. 781(*b*), by virtue of its ownership of the mineral estate in Kiowa County.

"5. The Farm Credit Administration has not lawfully granted the Federal Land Bank the special approval required by Title 12, United States Code, Par. 781 Fourth (*b*) for the Bank to hold title and possession of real property for a longer period than five years.

"6. Congress, in enacting Title 12, United States Code, Par. 931, did not exempt from taxation property held by a federal land bank (1) in excess of its delegated powers, or (2) property held by the land bank in direct contravention of the time limitation imposed by Congress in Title 12, United States Code, Par. 781 Fourth (*b*).

"7. The defendants in this case are entitled to raise the question of whether the Bank has exceeded or is in violation of its delegated powers as a defense to this action where the plaintiff attempts to avoid payment of taxes arising from property held without legal authority.

"8. The Court will not lend its aid in the enforcement of a claim of exemption founded on illegality.

"9. The holding of the property herein involved by plaintiff is not in exercise of a governmental function but is of the nature of a speculative investment after the governmental function with respect to the original mortgage investment has been accomplished.

"10. Judgment should be entered in this case for defendants, with costs.

"11. The injunction prayed for by the plaintiff is denied."

In this court the bank makes no complaint concerning the trial court's findings of fact and does·not contend they are not supported by the evidence. It is contended, however, that they do not support the judgment rendered. Specifically, it is argued (1) that the bank, being an instrumentality of the federal government, is immune from state, local and municipal taxation (*M'Culloch v. State of Maryland*, 4 Wheat. 316, 4 L. Ed. 579, and the many related decisions); (2) the bank, being a federal instrumentality is, as such, exempt from payment of personal property tax; (3) federal statutes and the construction thereof by federal courts are binding on state courts; (4) acts of the bank may not be challenged as *ultra vires*

by these defendants, and (5) the bank may lawfully reserve and retain mineral interests.

Insofar as here material, Title 12, U. S. C. A., § 781, referred to in conclusions of law 4, 5 and 6, above, reads:

"Every Federal land bank shall have power, subject to the limitations and requirements of this subchapter—. . . .

"Fourth. . . .

"To acquire and dispose of— . . .

"(*b*) Parcels of land acquired in satisfaction of debts or purchased at sales under judgments, decrees, or mortgages held by it. But no such bank shall hold title and possession of any real estate purchased or acquired to secure any debt due to it, for a longer period than five years, except with the special approval of the Farm Credit Administration in writing. Every such bank may carry real estate as an asset, for a period of not exceeding five years, at its normal value but not to exceed the amount of the bank's investment therein at the time of acquirement of such real estate."

Insofar as here material, Title 12, U. S. C. A., § 931, which is referred to in conclusion of law 6, above, reads:

"Every Federal land bank and every national farm loan association, including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank or association under the provisions of sections 761 and 781 of this title. . . ."

From conclusions of law 4, 5 and 6, it is apparent the trial court was of the opinion the bank holds title and possession of real property within the meaning of § 781, above, by virtue of its ownership of the mineral estate in question; that the Farm Credit Administration by its regulation, found at 6 CFR, § 10.64 (set out in finding of fact 4, above), had not lawfully granted to the bank the "special approval" required by § 781 for the bank to hold title and possession of real property for a period longer than five years, and that the Congress, in enacting § 931, above, did not exempt from taxation property held by a federal land bank in excess of its delegated powers or in direct contravention of the time limitation imposed by § 781.

There is much to be said for the proposition that the quoted regulation (6 CFR, § 10.64) of the Farm Credit Administration is in reality an invalid attempt by that body to delegate to the various federal land banks the discretion to determine whether to hold property for more than five years—that is, the regulation purports to permit such holding "when in the bank's opinion it is in the bank's interest to do so," whereas the Congress, in § 781, has ex-

pressly provided that such time limit may not be exceeded without the "special approval" of the Farm Credit Administration—thus lending support to the correctness of the trial court's ruling that the retention of the mineral interest by the bank is illegal and unlawful and therefore cannot be the basis of a claim of exemption from taxation.

Entirely aside from what has just been said relating to the purported delegation by the Farm Credit Administration to federal land banks of the discretion to determine whether to hold property for more than the five-year period notwithstanding that the Congress, by enacting § 781, has said that such cannot be done without the "special approval" of the Farm Credit Administration, it would appear from an examination of other sections of the federal act creating federal land banks that the only reasonable construction of that portion of § 781 authorizing a federal land bank to hold beyond five years, and of 6 CFR, § 10.64, is that inherently such provisions have reference only to those instances where retention of mineral interests would aid the bank in recouping its loss arising out of ownership of land as a result of its prior loan and foreclosure—in other words, it is logical to conclude that the provisions in question are limited to the furtherance of the governmental function for which the bank was created.

We think, however, there are even stronger and more compelling reasons why the trial court's judgment denying the bank's claim of exemption was correct and should be upheld.

We are concerned here with a tax only on personal property (G. S. 1949, 79-329 to 334, above). The fact of the matter is—and it is not contended otherwise—the bank had been made whole and had fully recouped any loss it may have sustained resulting from the foreclosure. The record contains no evidence that the bank retained the mineral interest in question in an effort to recoup any losses it may have incurred arising out of other loans or bank-held properties—and no contention is made with respect to that. For all the record shows, the mineral interest was retained merely as a "speculative investment" after the governmental function with respect to the original mortgage investment had been accomplished —just as was held by the trial court in its conclusion of law 9, above.

The case of *Clinton v. State Tax Commission*, 146 Kan. 407, 71 P. 2d 857, presented the question whether the compensation received by a woman as a clerk and stenographer for four federal agen-

cies (one of which was the Federal Land Bank of Wichita) was taxable under our state income-tax law. Concededly, the question was not the same as we have here, but the opinion contains an exhaustive and comprehensive review and discussion of many federal cases dealing with the subject of the immunity from state taxation of instrumentalities of the federal government, beginning with the historic landmark case of *M'Culloch v. State of Maryland*, above. In the interest of brevity we will not burden this opinion with quotations from the Clinton case, but we summarize a number of statements and rules found in that opinion, all of which are supported by federal authorities:

The doctrine of implied immunity from taxation is a necessary development of our dual system of state and federal government and must be given a practical construction which permits both governments to function with the minimum of interference each with the other, and that limitation cannot be so varied or extended as seriously to impair taxing powers of the government imposing the tax or the appropriate exercise of the functions of government affected by it. . . . The doctrine has its inherent limitations and is aimed at the protection of operations of government, and does not extend to anything lying outside or beyond functions essentially governmental in character. It does not exist where no direct burden is laid upon the governmental instrumentality. . . . The doctrine of implied immunity from taxation must be given a practical and not a mechanical construction. At some point the interference becomes too remote to warrant an application of the immunity which has been implied from the sovereign nature of the federal government. When that point is reached the power of the state prevails. Neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. . . . Where the immunty exists it is absolute, resting upon an entire absence of power, but it does not exist where no direct burden is laid upon the governmental instrumentality and where there is only a remote, if any, influence upon the exercise of the functions of government. . . . It has long been held that unless a tax actually hinders or interferes with the efficient exercise of the purposes sought to be accomplished, the doctrine of implied immunity does not apply— that is to say, it is restricted to the protection of functions essentially governmental in character, and, when the particular tax does not violate the reasoning underlying the principle of immunity, namely,

the protection of functions of government—the rule fails. . . .
A government may not depart from functions essentially govern-
mental in character and enter into fields of business inherently
private in their nature and yet demand protection from taxation
behind a shield of implied immunity.

See, also, *Boeing Airplane Co. v. Commission of Revenue and
Taxation,* 153 Kan. 712, 716, 717, 718, 719, 113 P. 2d 110.

In *M.-K.-T. Rld. Co. v. State Tax Commission,* 150 Kan. 614, 616,
95 P. 2d 293 (1939), it was said that it must be kept in mind that
both federal and state courts in recent years have come to view
claims to exemption from the common burden of taxation much
more strictly than formerly, and it is universally held that taxation
is the rule and exemption is the exception, and that a party claim-
ing an exemption must prove all facts necessary to show that he is
entitled thereto. (*Clinton v. State Tax Commission,* above, syl. 5;
*Clements v. Ljungdahl,* 161 Kan. 274, 167 P. 2d 603; *Defenders of
the Christian Faith, Inc. v. Horn,* 174 Kan. 40, 44, 254 P. 2d 830;
*Midwest Solvents Co. v. State Comm. of Rev. & Taxation,* 183 Kan.
104, 108, 325 P. 2d 311; *Kansas State Teachers Ass'n v. Cushman,*
186 Kan. 489, 501, 351 P. 2d 19.)

Application of the rules and principles stated in the Clinton case
to the facts before us can lead to but one result.

One of the primary functions of the bank is to extend credit to
persons engaged in agriculture and to make loans on the security
of real-estate mortgages. The acquisition and holding of real estate
is a mere incident to its money-lending functions and is authorized
only when it is a necessary incident to those functions. § 781, above,
by its very terms, provides that the bank has the power to acquire
and dispose of parcels of land acquired in satisfaction of debts or
purchased at sales under judgments, decrees or mortgages held by
it. When the bank, in 1946, retained the mineral interest in ques-
tion it had absolutely no further financial interest to protect with
respect to the property and the loan previously made thereon.
Any loss which may have been incurred had been fully recouped.
There remained no further federal governmental purpose to be
served by retention of the mineral interest. There is nothing in
the act authorizing a federal land bank to hold or acquire property
interests for profit or speculation. We believe that the Congress,
in enacting the exemption provision in § 931, above, intended that
the tax immunity there provided should apply only when the bank

is engaged in the furtherance of its governmental function. Under the facts before us, how does the imposition of this personal property tax impede or interfere with the legitimate function of the federal instrumentality involved? It does not—and when the reason for the rule of tax immunity, namely, the protection of functions of government—fails—the rule fails.

No reason has been shown why the state and county should be denied the right to tax the property here involved which is not being held and used in furtherance of a federal purpose. The judgment of the trial court denying to the bank the injunctive relief sought was correct and is affirmed.