## FEDERAL LAND BANK OF WICHITA *v.* BOARD OF COUNTY COMMISSIONERS OF KIOWA COUNTY, KANSAS, ET AL.

No. 25. Argued October 16, 1961.—Decided December 11, 1961.

*J. William Doolittle* argued the cause for petitioner. With him on the briefs were *Solicitor General Cox, Assistant Attorney General Oberdorfer, I. Henry Kutz, Paul O. Ritter, William G. Plested, Jr.* and *Edward H. Jamison.*

*Robert C. Londerholm,* Special Assistant Attorney General of Kansas, argued the cause for respondents. With him on the briefs were *William M. Ferguson,* Attorney General, and *A. K. Stavely,* Assistant Attorney General.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

A political subdivision of a State has levied a personal property tax on a federal instrumentality despite a claim of immunity by virtue of a federal statute.

Petitioner, the Federal Land Bank of Wichita, acquired a mortgage on realty in Kiowa County, Kansas, in the course of its business as a federal instrumentality duly organized under the Federal Farm Loan Act.[1] Upon default, foreclosure, purchase at a sheriff's sale, and confirmation, petitioner became the owner of the land. Subsequently the land was conveyed to a third party, the deed reserving an undivided one-half interest in the mineral estate. By the time of this conveyance petitioner had recovered the entire loss occasioned by the default on the mortgage. Petitioner executed an oil and gas lease on the reserved mineral estate, and the discovery of a gas pool in the area ultimately led to the payment of royalties.

A Kansas statute declared that oil and gas leases and the royalties derived therefrom were personal property and were subject to taxation by the counties.[2] Pursuant

---

[1] The Act of July 17, 1916, 39 Stat. 360, as amended, currently codified at 12 U. S. C. § 641 *et seq.*

[2] General Statutes of Kansas, 1949, §§ 79–329 to 79–334. Section 79–329 reads as follows:

"Oil and gas property as personalty. That for the purpose of valuation and taxation, all oil and gas leases and all oil and gas wells, producing or capable of producing oil or gas in paying quantities, together with all casing, tubing or other material therein, and all other equipment and material used in operating the oil or gas wells are hereby declared to be personal property and shall be assessed and taxed as such."

to this statute, Kiowa County levied a personal property tax on petitioner's interest in the oil and gas lease and on the royalties for the year 1957.

By the time the tax was levied, petitioner had owned the mineral estate some 14 years. The statute which authorized federal land banks to acquire mortgaged lands limited the period of ownership to five years unless special permission could be obtained from the Farm Credit Administration.[3] That agency had promulgated a regulation granting blanket permission to all land banks to hold mineral rights longer than five years.[4]

Petitioner sought an injunction against collection of the personal property tax in the state court, claiming an exemption under 12 U. S. C. § 931,[5] which provides, in part, that federal land banks "shall be exempt from . . . State, municipal, and local taxation, except taxes upon real estate held . . . under the provisions of [section] . . . 781." [6] The injunction was denied. On appeal, the

---

[3] "Fourth. *Acquiring and disposing of property.*—To acquire and dispose of—

"(a) Such property, real or personal, as may be necessary or convenient for the transaction of its business, which, however, may be in part leased to others for revenue purposes.

"(b) Parcels of land acquired in satisfaction of debts or purchased at sales under judgments, decrees, or mortgages held by it. But no such bank shall hold title and possession of any real estate purchased or acquired to secure any debt due to it, for a longer period than five years, except with the special approval of the Farm Credit Administration in writing." 12 U. S. C. § 781 Fourth, 39 Stat. 372, § 13.

[4] 6 CFR § 10.64. See text p. 153, *infra.*

[5] "Every Federal land bank . . . including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank . . . under the provisions of [section] . . . 781 of this title. . . ."

[6] See note 3, *supra.*

Supreme Court of Kansas affirmed,[7] holding that Congress did not intend § 931 to exempt this personal property from taxation because the mineral estate was being held longer than the express time limit established by Congress and because the holding of the mineral estate after the loss had been recouped did not serve the governmental function assigned to the Federal Land Bank. The Court also held that no immunity could be implied. Certiorari was granted in order to determine whether the State had exacted a tax forbidden by the Supremacy Clause of the Constitution.[8] 365 U. S. 841.

The Supreme Court of Kansas correctly concedes that a federal instrumentality is not subject to the plenary power of the States to tax,[9] that the Congress has the power to determine, within the limits of the Constitution, the extent that its instrumentalities shall enjoy immunity from state taxation,[10] that the federal land bank is a constitutionally created federal instrumentality,[11] and that Congress has immunized it from personal property taxes on activities in furtherance of its lending functions.[12]

---

[7] 187 Kan. 148, 354 P. 2d 679.

[8] Article VI, cl. 2.

[9] *McCulloch* v. *Maryland,* 4 Wheat. 316; *Osborn* v. *Bank of the United States,* 9 Wheat. 738.

[10] *Carson* v. *Roane-Anderson Co.,* 342 U. S. 232; *Cleveland* v. *United States,* 323 U. S. 329; *Maricopa County* v. *Valley National Bank,* 318 U. S. 357; *Federal Land Bank of St. Paul* v. *Bismarck Lumber Co.,* 314 U. S. 95; *Pittman* v. *Home Owners' Loan Corp.,* 308 U. S. 21; *Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466; *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103; *First National Bank* v. *Adams,* 258 U. S. 362; *Owensboro National Bank* v. *Owensboro,* 173 U. S. 664.

[11] *Smith* v. *Kansas City Title Co.,* 255 U. S. 180.

[12] *Federal Land Bank* v. *Bismarck Lumber Co.,* 314 U. S. 95. See also *Federal Land Bank* v. *Crosland,* 261 U. S. 374. Cf. *Federal Land Bank* v. *Priddy,* 295 U. S. 229.

The controversy arises over the holding by the Supreme Court of Kansas on alternative grounds that Congress did not intend § 931 to apply to oil and gas leases in the circumstances of this case.[13]

## I.

The Court found that the retention of the mineral estate by the petitioner after the loss incurred upon the default on the mortgage had been recovered did not serve the governmental function assigned to the land bank and, as Congress intended immunity to apply only to protect this function, § 931 did not apply here. The Court did not define the type of function that petitioner did perform. Legitimate activities of governments are sometimes classified as "governmental" or "proprietary"; [14] however, our decisions have made it clear that the Federal Government

---

[13] Oil and gas leases are personal property under the law of Kansas, a characterization accepted by the Court and all parties below. We do not need to consider the situation when oil and gas leases are characterized as real property under state law. See, e. g., Stokely v. State, 149 Miss. 435, 115 So. 563; Terry v. Humphreys, 27 N. M. 564, 203 P. 539; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290. Other jurisdictions classify oil and gas leases as profits à prendre or incorporeal interests. See generally 1A Summers, Oil & Gas, §§ 151–170. Cf. Concepts of the nature of mineral interests discussed in footnote 21, infra.

[14] These general terms serve as a basis for determining, inter alia, whether the doctrine of sovereign immunity protects a municipality from liability for a tort committed by one of its servants, see, e. g., Dallas v. City of St. Louis, 338 S. W. 2d 39 (Mo.); Clark v. Scheld, 253 N. C. 732, 117 S. E. 2d 838; Osborn v. City of Akron, 171 Ohio St. 361, 171 N. E. 2d 492; Wade v. Salt Lake City, 10 Utah 2d 374, 353 P. 2d 914; Francke v. City of West Bend, 12 Wis. 2d 574, 107 N. W. 2d 500; 18 McQuillin, Municipal Corporations, §§ 53.01, 53.23, 53.24 (3d ed. 1950). But cf. New York v. United States, 326 U. S. 572.

performs no "proprietary" functions.[15]   If the enabling
Act is constitutional and if the instrumentality's activity
is within the authority granted by the Act, a governmental
function is being performed.   Since the Act establishing
the federal land banks has been held to be constitutional,
*Smith* v. *Kansas City Title Co.*, 255 U. S. 180, we need
only to determine whether the challenged ownership
comes within the purview of the statute.

The purpose of the Federal Farm Loan Act and
its subsequent amendments was to provide loans for agri-
cultural purposes at the lowest possible interest rates.[16]
One method of keeping the interest rate low was to
authorize the federal land bank to make a profit to be
distributed to the shareholders in the form of divi-
dends.[17]   Because the associations of farmer-borrowers

---

[15] "The argument that the lending functions of the federal land
banks are proprietary rather than governmental misconceives the
nature of the federal government with respect to every function which
it performs.   The federal government is one of delegated powers, and
from that it necessarily follows that any constitutional exercise of its
delegated powers is governmental. . . .   It also follows that, when
Congress constitutionally creates a corporation through which the
federal government lawfully acts, the activities of such corporation
are governmental [citing cases]." *Federal Land Bank* v. *Bismarck
Lumber Co.*, 314 U. S. 95, 102.   See *Pittman* v. *Home Owners' Loan
Corp.*, 308 U. S. 21, 32; *Graves* v. *New York ex rel. O'Keefe*, 306
U. S. 466, 477.

[16] S. Rep. No. 144, 64th Cong., 1st Sess. 1, 2, 4, 7–9; H. R. Rep. No.
630, 64th Cong., 1st Sess. 4, 5; H. Doc. No. 494, 64th Cong., 1st Sess.,
8; 53 Cong. Rec. 6696, 7021, 7023, 7024.   Nothing in the subsequent
amendments has been called to our attention which modifies this
purpose.   See Faulkner, American Economic History, 388–390 (6th
ed. 1949) ; Bogart and Kemmerer, Economic History of the American
People, 698 (1944).

[17] *Federal Land Bank* v. *Priddy*, 295 U. S. 229, 233.   The Act of
July 17, 1916, 39 Stat. 360, § 23, now 12 U. S. C. § 901 *et seq.;*
S. Rep. No. 144, 64th Cong., 1st Sess. 5.   H. R. Rep. No. 630, 64th
Cong., 1st Sess. 10.

were required by law to be shareholders,[18] the distribution of dividends effectively reduced the interest rates. This profit could be earned in two ways: interest from the loans on mortgaged lands and gains on the sale of lands acquired under the provisions of § 781 Fourth.[19] The Kansas Court construes § 781 Fourth (b) to grant the limited power to sell land acquired in satisfaction of a debt only to recoup the loss incurred upon the default. We find no such limitation expressed or implied. The loans on the mortgages are limited to a percentage of the current value of the lands that is considerably less than full value, but there is no limit on the amount of the sale price. The banks are therefore authorized to sell lands acquired after default at the best possible price, absorbing the losses in the reserve accounts[20] and distributing the profits in dividends. It follows that the land banks are not restricted to a sale price merely sufficient to recoup any losses. The retention of a mineral interest might well be a method of increasing the recovery from lands acquired through mortgage defaults. Consequently, we find that the holding of the mineral estate involved here is in furtherance of the bank's governmental function.

## II.

The alternative ground relied upon by the Supreme Court of Kansas for concluding that Congress did not intend to confer immunity here relates to the asserted

[18] Persons engaged in agriculture are the only class authorized to borrow from the federal land banks. To obtain a loan, application is made for membership in an association comprised solely of other borrowers. The prospective borrower is required to subscribe to stock in the association in proportion to the loan he desires to obtain. The association approaches the federal land bank, obtains the loan, and subscribes to stock in the federal land bank in proportion to the loan. See 12 U. S. C. §§ 721, 733. Cf. 12 U. S. C. § 723.

[19] See note 3, *supra*.

[20] 12 U. S. C. § 901.

illegality of petitioner's ownership of the mineral estate. Section 781 Fourth (b) limits the time that a federal land bank may own realty acquired after default on the mortgage to five years unless special permission can be obtained from the Farm Credit Administration. Mineral estates are realty under the state law,[21] and at the time of the tax levy petitioner had owned the mineral estate longer than five years, relying upon the following regulation promulgated by the Farm Credit Administration to supply the requisite special permission:

> "*Holding mineral rights for more than 5 years.* In cases where, in connection with a sale of bank-owned real estate, the bank has retained royalty or other rights in or to minerals, and desires to hold such rights for a period in excess of 5 years, it is not considered that the bank has both 'title and possession' of real estate within the meaning of section 13 Fourth (b) of the Federal Farm Loan Act (12 U. S. C. 781 Fourth (b)). However, retention of such minerals and mineral rights for periods in excess of 5 years, when in the bank's opinion it is in the bank's interest to do so, has the approval of the Administration." [22]

---

[21] We take this statement from the opinion below. We note that petitioner has paid real estate taxes on the mineral estate. Mineral interests receive varying characterizations among the States. Some jurisdictions recognize a horizontal severance of the freehold into surface and mineral estates; others treat the mineral interests as incorporeal hereditaments. Compare *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, with *Stephens County* v. *Mid-Kansas Oil & Gas Co.,* 113 Tex. 160, 166, 254 S. W. 290, 291. Cf. *Wilson* v. *Holm,* 164 Kan. 229, 188 P. 2d 899. See Masterson, A 1952 Survey of Basic Oil and Gas Law, 6 Sw. L. J. 1; Walker, Fee Simple Ownership of Oil and Gas in Texas, 6 Tex. L. Rev. 125.

[22] 6 CFR § 10.64.

Although the reasons are not altogether clear, the Court found this special permission invalid, concluding that petitioner is, therefore, owning the land without authority.

First, the Court found "much to be said" for the trial court's holding that the regulation was not effective because the Farm Credit Administration could not delegate the power to determine when mineral interests might be retained longer than five years to the federal land banks, so that no "special permission" had been given. Assuming that this is a holding by the highest state court, we are of the opinion that no delegation problem has been presented. Analytically, the power given to the Farm Credit Administration by § 781 Fourth (b) is a licensing power,[23] not a rule-making, an adjudicating, or an investigating power. The regulation states that federal land banks have permission to retain mineral interests longer than five years. This is an exercise of the power to license, not a delegation of it.

The second ground for invalidating the permission given by the Farm Credit Administration was that permission could not be given unless the holding of the land was necessary to recoup the loss on the defaulted mortgage. As we have indicated, the holding of a mineral estate after the bank has recouped its loss is within the authority granted by Congress, and thus the Administration had the power to grant this permission.

---

[23] "The word 'license,' means permission, or authority; and a license to do any particular thing, is a permission or authority to do that thing; and if granted by a person having power to grant it, transfers to the grantee the right to do whatever it purports to authorize. It certainly transfers to him all the right which the grantor can transfer, to do what is within the terms of the license." *Gibbons* v. *Ogden*, 9 Wheat. 1, 213–214; see, *e. g.*, *Sinnot* v. *Davenport*, 22 How. 227, 240; *Southern Pac. R. Co.* v. *Olympian Dredging Co.*, 260 U. S. 205; *Pan-Atlantic S. S. Corp.* v. *Atlantic C. L. R. Co.*, 353 U. S. 436; Administrative Procedure Act, § 2 (e), 5 U. S. C. § 1001 (e).

While the court below did challenge the power of the Farm Credit Administration to give the permission required by § 781 Fourth (b), it did not challenge the interpretation placed on that statute when blanket permission was given. The Administration interpreted § 781 Fourth (b) to exclude mineral estates.[24] We, therefore, are not required to review that interpretation [25] or to examine the jurisdiction, if any, of a state court to review the statutory construction made by a federal administrative agency in a collateral attack on the issuance of a license.

While it is not necessary to this decision, it is at least of interest that there have been efforts in successive sessions of Congress to amend the Act to accomplish the result achieved by the Supreme Court of Kansas and that these efforts have failed.[26] The extent of the mineral estates owned by federal land banks is considerable: petitioner owns an interest in approximately 283,000 acres; all land banks own an interest in 9,900,000 acres.[27]

## III.

Since there are no infirmities in the holding of the mineral estate by the petitioner, there is no basis for implying that Congress did not intend § 931 to provide immunity

---

[24] 6 CFR § 10.64 quoted in text at p. 153, *supra.*

[25] See, *e. g., Skidmore* v. *Swift & Co.,* 323 U. S. 134, 139–140; *Unemployment Comp. Comm'n* v. *Aragon,* 329 U. S. 143, 153; Administrative Procedure Act, § 10 (e), 5 U. S. C. § 1009 (e); see also, *e. g,* Witherspoon, Administrative Discretion to Determine Statutory Meaning: "The High Road," 35 Tex. L. Rev. 63; *ibid.,* "The Low Road," 38 Tex. L. Rev. 392, 572; Nathanson, Administrative Discretion in the Interpretation of Statutes, 3 Vand. L. Rev. 470.

[26] See H. R. 9290, 76th Cong., 3d Sess.; H. R. 667, 79th Cong., 1st Sess.; H. R. 583, 80th Cong., 1st Sess. See also H. R. 1721 and H. R. 2358, 80th Cong., 1st Sess.; H. R. 1264, 81st Cong., 1st Sess.; S. 2904, 82d Cong., 2d Sess., and H. R. 428, 82d Cong., 1st Sess.; S. 75, H. R. 102 and H. R. 1313, 83d Cong., 1st Sess.; S. 538, 84th Cong., 1st Sess.

[27] Petition for writ of certiorari, pp. 8, 9.

in this case.   As an express immunity has been conferred, there is no need to consider whether the doctrine of implied immunity applies.   We conclude that the state personal property tax imposed on petitioner's oil and gas lease and upon the royalties derived therefrom must fall as being unconstitutional by virtue of the Supremacy Clause of the Constitution.

*Reversed.*

MR. JUSTICE BLACK concurs in the result.