Randy Miller Executive Director, Department of Revenue Tallahassee
QUESTION:
Does 12 U.S.C. § 2055 exempt federal land bank associations from Florida tangible personal property taxes?
SUMMARY:
In the process of exempting every federal land bank association from state and local taxation except for taxes on real estate held by such associations, 12 U.S.C. § 2055 operates to exempt federal land bank associations from Florida tangible personal property taxes.
Beginning with the historic case of M'Culloch v. Maryland,4 L.Ed. 579 (1819), the United States Supreme Court declared that it was not within the power of a state to levy any tax on the instruments, means, or agencies established by the United States Government to enable it to carry into execution its legitimate powers and functions. A long line of subsequent decisions by the United States Supreme Court has firmly established the principle that the state are without power, unless authorized by Congress, to tax federal instrumentalities. Osborn v. Bank of United States,6 L.Ed. 204 (1824); Federal Land Bank v. Bismark Lumber Company,314 U.S. 95 (1941); and Federal Land Bank v. Board of County Commissioners, 368 U.S. 146 (1961).
A federal land bank association is a federal instrumentality, originally established by Congress pursuant to 12 U.S.C. ss. 711-723, and continued as a federal instrumentality of the United States pursuant to 12 U.S.C. § 2031. See also Greene County National Farm Loan Association v. Federal Land Bank, 152 F.2d 215
(6th Cir. 1945), cert. denied. 328 U.S. 834, wherein the court held that federal land banks and their constituent farm loan associations (now federal land bank associations) are instrumentalities of the Federal Government, engaged in the performance of an important governmental function; and cf. AGO 047-239, July 30, 1947, Biennial Report of the Attorney General, 1947-1948, p. 242.
As a federal land bank association is a federal instrumentality (expressly declared to be such by Congress, 12 U.S.C. § 2031), it necessarily follows that a state cannot lay a tax on such an instrumentality unless authorized by Congress. See AGO 071-212. Congress has given limited authority to the states to tax federal land banks and federal land bank associations by the enactment of 12 U.S.C. § 2055, which provides in relevant part as follows:
 Every Federal Land Bank and every Federal Land Bank Association and the capital, reserves, and surplus thereof, and the income derived therefrom shall be exempt from
Federal, State, municipal, and local taxation, except taxes on real estate held by a Federal Land Bank or a Federal Land Bank Association to the same extent, according to its value, as other similar property held by other persons is taxed. (Emphasis supplied.)
Although the above federal statute expressly makes the real property owned by federal land bank associations taxable under the appropriate state statutes, no authority would appear to be granted for the taxation of the tangible personal property owned by federal land bank associations. This conclusion is supported by the following cases in which the courts construed the meaning of 12 U.S.C. § 2055 and its predecessor, 12 U.S.C. § 931.
In Federal Land Bank of St. Paul v. State of North Dakota, et al.,274 N.W.2d 580 (N.D. 1979), the Supreme Court of North Dakota held that a federal land bank's royalty interests in produced oil and gas were not subject to the state's gross production tax because the bank's royalty interests were personal property, rather than real property, and therefore immune from tax under 12 U.S.C. § 2055.
Similarly, in Federal Land Bank v. Board of County Commissioners,368 U.S. 146 (1961), a political subdivision of the State of Kansas levied a personal property tax on a federal land bank's interest in an oil and gas lease and royalties paid thereon. Under Kansas law, these mineral interests constituted `personal property.' The federal land bank claimed an exemption from this tax under 12 U.S.C. § 931, the predecessor to 12 U.S.C. § 2055, which provided in relevant part as follows:
 Every Federal land bank and every national farm loan association, including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate . . . .
In holding that the personal property tax was in conflict with12 U.S.C. § 931, and therefore unconstitutional by virtue of the Supremacy Clause of the Federal Constitution, the United States Supreme Court stated:
 The Supreme Court of Kansas correctly concedes that a federal instrumentality is not subject to the plenary power of the States to tax, that the Congress has the power to determine, within the limits of the Constitution, the extent that its instrumentalities shall enjoy immunity from state taxation, that the federal land bank is a constitutionally created federal instrumentality, and that Congress has immunized it from personal property taxes on activities in furtherance of its lending functions. [368 U.S., p. 149.]
Also, in Federal Land Bank v. Bismark Lumber Co., supra, the Supreme Court held that, under 12 U.S.C. § 931, a federal land bank was not subject to a state sales tax on purchases of materials for use in repairing and improving the buildings and fences of certain farm lands acquired by the bank through the foreclosure of mortgages taken to secure farm loans made in the course of its business. The court stated:
 The federal government is one of delegated powers, and from that it necessarily follows that any constitutional exercise of its delegated powers is governmental. . . . It also follows that when Congress constitutionally creates a corporation through which the federal government lawfully acts, the activities of such corporation are governmental. [314 U.S., p. 102.]
Stating that these land banks were instrumentalities of the Federal Government engaged in the performance of an important governmental function, the court concluded that Congress had the power under the Necessary and Proper Clause of s. 8, Art. I of the United States Constitution to protect the instrumentalities which it constitutionally created.
It was also the opinion of the United States Supreme Court in theBismark Lumber case that the phrase, `including the capital and reserve or surplus therein and the income derived therefrom,' did not limit the scope of the exemption under 12 U.S.C. § 931. In ruling that the unqualified term `taxation' used in12 U.S.C. § 931 clearly encompassed within its scope a sales tax such as the one before the court, the court stated as follows:
 . . . In reaching an opposite conclusion the court below ignored the plain language, `That every Federal land bank . . . shall be exempt from Federal, State, municipal, and local taxation' and seized upon the phrase, `including the capital and reserve or surplus therein and the income derived therefrom,' as delimiting the scope of the exemption. The protection of s. 26 cannot thus be frittered away. We recently had occasion under other circumstances to point out that the term `including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle. [314 U.S., pp. 99, 100.]
The Supreme Court continued by stating that, if the broad exemption accorded to every `Federal land bank' were limited to the specific illustrations mentioned in the particular phrase `including the capital and reserve or surplus therein and the income derived therefrom,' there would have been no necessity to except from the purview of 12 U.S.C. § 931, real estate held by the land banks.
As federal land banks and federal land bank associations are granted the same tax immunity under 12 U.S.C. § 2055 and its predecessor, 12 U.S.C. § 931, the court's construction of the tax immunity of federal land banks in the cases above would appear applicable to federal land bank associations.
Prepared by: Cecil Davis, Assistant Attorney General