FEDERAL LAND BANK OF
WICHITA, Plaintiff,

v.

The BOARD OF COUNTY COMMIS-
SIONERS OF the COUNTY OF
ADAMS, et al., Defendants.

Civ. A. No. 84–K–126.

United States District Court,
D. Colorado.

April 9, 1984.

Martin A. Rosen, Robert F. Wilson, and Michael J. Sternick, Pendleton & Sabian, P.C., Denver, Colo., for plaintiff.

S. Morris Lubow, Denver, Colo., for all defendants.

## ORDER DENYING MOTION TO DISMISS

KANE, District Judge.

The Federal Land Bank of Wichita has brought this action against 50 Colorado Counties through their respective Board of County Commissioners, claiming jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity). The defendant counties have challenged the jurisdiction of this court, and have moved to dismiss the action.

Plaintiff is a federal instrumentality established pursuant to the Federal Farm Loan Act of 1916, as continued under the Farm Credit Act of 1971 (12 U.S.C. § 2001 *et seq.*). Plaintiff owns certain oil and gas royalty interests that burden producing properties in 21 of the defendant counties. It also owns non-producing properties in the other 29 counties. The bank's royalty interests in the 21 counties have been subjected to *ad valorem* taxes under the Colo-

rado property tax scheme that is governed primarily by Colo.Rev.Stat. § 39–7–101 *et seq.* Its royalty interests in the other 29 counties will be similarly affected by the current tax scheme, if and when production of minerals occurs. Plaintiff is expressly immune from all local taxation except for taxes upon real estate, "according to its value." *See* 12 U.S.C. § 2055. The bank contends that the Colorado taxes are upon personal property and not upon real property based upon its value. Thus, the tax is unlawful under the federal statute. It also contends that the tax violates the Supremacy Clause of the U.S. Constitution.

The bank prays for (1) a declaratory judgment that its royalty interests are exempt from taxation under Colorado law; (2) a mandatory injunction prohibiting the counties from future assessments or collection of such taxes upon the Bank's mineral holdings; and (3) costs, attorneys fees, and other unspecified legal and equitable relief.

The defendants raise several grounds for the dismissal of this action. They argue (1) that the Tax Injunction Act precludes suit in federal court; (2) that there is no federal question involved in the action because the interpretation of the Colorado tax in question is a matter of state law; (3) that the 50 defendants are merely the cumulative alter ego of the State of Colorado, and hence immune from suit under the 11th Amendment; (4) that there is no justiciable controversy between the plaintiff and the 29 counties in which no production has yet occurred; and (5) that the plaintiff has failed to join indispensable parties, namely the State of Colorado and others.

## I. THE TAX INJUNCTION ACT

[1] Defendant counties assert first that this court does not have jurisdiction by virtue of 28 U.S.C. § 1341, the Tax Injunction Act:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such State.

The principle of comity underlying this statute, *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 103, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981), is subject to modification when it is in conflict with principles of federalism. Thus an action commenced by the United States is not barred by the statute:

> [W]e conclude, in accord with an unbroken line of authority and convincing evidence of legislative purpose, that § 1341 does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions.

*Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966). The issue that is raised in this motion is whether an instrumentality of the federal government, such as the Federal Land Bank, can challenge the levy of a state tax ·in federal court without joining the United States as a plaintiff.

Few courts have considered this precise question. In *Federal Reserve Bank of Boston v. Commissioner of Corporations & Taxation*, 499 F.2d 60 (1st Cir.1974), the bank sought a declaratory judgment concerning the legality of a state's application of its sales tax to the purchase of materials for the construction of the bank's new building.· The court held that the bank could maintain the action even though the United States was not a co-plaintiff. As a factual matter the bank could not be analogized to a private corporation, but was predominantly a:

> fiscal arm[ ] of the federal government. Their interests seem indistinguishable from those of the sovereign... [The banks] were created and are operated in furtherance of the national fiscal policy. They are not operated for the profit of shareholders, and do not provide ordinary commercial banking services; their stockholders, the member banks, lack of powers and rights customarily vested in shareholders of a private corporation. Federal reserve banks act as depositories for money held in the United States Treasury and as fiscal and monetary agents

of the United States.... They also provide important services for the Treasury with respect to the public debt... The limited income generated is used to pay expenses and dividends limited to six percent. Any remaining earnings are paid into the surplus fund ... where they may be used by the United States Treasury to supplement the gold reserve. 499 F.2d at 62–63. Having established the "governmental role" of the reserve bank, the court saw little reason to require "symbolic joinder by the United States itself." 499 F.2d at 62.

The second prong of the analysis examines the nature of the claim brought by the federal instrumentality. When a claim only raises issues of state law, the federal courts should renounce jurisdiction over the case, even when the United States is a party. See *United States v. Nevada Tax Comm'n*, 439 F.2d 435 (9th Cir.1971). The court in *Boston*, however, held that constitutional issues involving the Supremacy Clause, the federal charter and regulations of the bank were inextricably interwoven with the issue of the meaning of the state's tax statute. Abstention was therefore appropriate.

A year earlier, the First Circuit refused to extend the federal instrumentality doctrine to enable a party to challenge a state tax independently of the United States. *United States v. State Tax Comm'n*, 481 F.2d 963 (1st Cir.1973). The court prevented the intervention of 4,500 savings and loan associations in a suit by the United States, because even though the associations were entitled to wear the mantle of "federal instrumentalities" they were essentially private corporations. 481 F.2d at 975. The First Circuit's approach is thus to examine the nature of the party seeking the exemption before deciding if the federal instrumentality doctrine applies.

The emphasis in the Ninth Circuit is different. That court presumes that the United States must be joined as a party. It does not, however, deny that cases such as *Boston* deserve special consideration. Thus, in *Housing Authority of Seattle v. Washington*, 629 F.2d 1307 (9th Cir.1980), the court held that the federal instrumentality exception to § 1341 did not permit a public housing agency to maintain suit in federal court challenging state taxation without joining the United States as a party. The decision was based on the strong policy of noninterference with state taxation procedures. 629 F.2d at 1311. The court did recognize the *Boston* exception, but refused to discuss its validity because the plaintiff Housing Authority did not come within its ambit. 629 F.2d at 1311–12.

As with the First Circuit in the *Boston* case, the Ninth Circuit's decision in *Housing Authority* was an apparent *volte face*. In *Agua Caliente Band of Mission Indians v. Riverside*, 442 F.2d 1184 (9th Cir. 1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972), the court allowed the plaintiff tribe to challenge the imposition of a state tax on lessees of Indian land, despite the absence of the United States. It argued that the reasons for exempting the United States from the operation of § 1341 were no less cogent when the right to the exemption was asserted by one who could properly be a co-plaintiff with the United States.[1]

These cases[2] reveal that a principled, rather than formalistic approach requires

---

**1.** The Supreme Court "laid to rest" the federal instrumentality concept as a basis for allowing Indian tribes to avoid the § 1341 bar in *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). The court construed 28 U.S.C. § 1362 as giving American Indians the same right to sue as enjoyed by the United States. The tribes now stand in the shoes of the government. 425 U.S. at 474–75, 96 S.Ct. at 1642.

**2.** A variation on these cases holds that a private party can challenge a state tax despite § 1341, if

the United States has a "special interest" in the suit. See, e.g., *National Carriers' Conference Committee v. Hefferman*, 440 F.Supp. 1280 (D.Conn.1977) (fiduciaries of a national dental plan established under ERISA could challenge a state tax because the United States had a special interest in plans of this type and could have brought the suit itself. However, § 1341 should operate as a bar unless there is a threat to federal sovereignty. If a sufficient threat to such sovereignty arises, presumably the attorney general will take action. With a federal instrumentality, the threat to sovereignty arises

an inquiry into the nature of the federal instrumentality and its claim. Where the instrumentality exists primarily to perform governmental functions, it is superfluous to require the United States to be joined as a party. I conclude that the Federal Land Bank is such an entity.

The federal land banks were created to implement the federal fiscal policy objective of supplying greater and cheaper land credit. *United States v. Mississippi Chemical Corp.*, 405 U.S. 298, 301, 92 S.Ct. 908, 910, 31 L.Ed.2d 217 (1972). The system set up to accomplish this goal parallels the federal reserve system. Both systems are comprised of 12 banks that operate outside the "executive chain of command." *Boston*, 499 F.2d at 63. The banks comprising each system are unlike private corporations in that shareholders cannot freely transfer their shares, 12 U.S.C. § 2013(b). The federal land banks like the federal reserve banks can pay dividends. 12 U.S.C. § 2013(c).[3] They also act as depositories of public money, can be employed as fiscal agents of the United States government, 12 U.S.C. § 2012(14), and perform important services for the government by buying and selling their securities. 12 U.S.C. § 2012(15).

While federal land banks have a lower profile than federal reserve banks, and are not as continuously involved in "governmental" duties such as issuing currency, I conclude that they further important governmental objectives through a similar autonomous system. While the ultimate benefits of the federal land banks inure to a more limited section of society, I cannot adhere to the suggestion that they are the equivalent of private companies. The banks were set up to provide cheaper and greater credit for farmers. The people who are the beneficiaries of the system are limited to precisely the benefit envisaged by Congress: greater and cheaper credit.

Shareholders in private corporations are not similarly restricted. While accomplishing this objective, the land banks also act as agents of the United States government, and perform services for it. Private corporations are not similarly privileged.

## II. FEDERAL QUESTIONS

The second arm of the *Boston* test requires a determination of the nature of the plaintiff's claim in order to decide the propriety of requiring the parties to proceed in state court. The defendant counties argue that as 12 U.S.C. § 2055 clearly requires the plaintiff bank to pay *ad valorem* taxes, the task for the court will be simply to decide whether the Colorado tax is one upon real or personal property. This is a question of state law. The presence of a federal instrumentality as a plaintiff, however, entails consideration of federal issues. There will be at least one issue of whether the Colorado tax scheme, as applied to this plaintiff, must be limited by principles of federal constitutional and statutory law. Thus, abstention is not appropriate.

## III. IMMUNITY UNDER THE ELEVENTH AMENDMENT

The defendant counties next argue that they are the cumulative *alter ego* of the state and hence immune under the 11th Amendment. Alternatively, they assert that counties are immune in their own right.

The general rule is that the 11th Amendment does not apply to counties. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *see Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 363, 33 L.Ed. 766 (1890). The Amendment, however, does bar suits against county of-

by operation of a tax on a *particular plaintiff* rather than by operation of the tax at all. The contours of the "federal instrumentality" exception to § 1341 are thus capable of greater definition, thereby reducing the need for the United States to lend its approval to the action.

3. The dividends have been justified as one means of effectively reducing the interest rate on loans made, because the only shareholders are those who have borrowed money from the bank. *Federal Land Bank of Wichita v. Bd. of County Commissioners*, 368 U.S. 146, 151–52, 82 S.Ct. 282, 286, 7 L.Ed.2d 199 (1961).

ficials if that will "protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself." *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979). Insofar as suits for damages are concerned, the Tenth Circuit is in agreement that county or local officials are immune if a judgment against them would affect the state. *Harris v. Tooele County School Dist.,* 471 F.2d 218, 220 (10th Cir. 1973). *See also Clulow v. Oklahoma,* 700 F.2d 1291, 1299 n. 11 (10th Cir.1983); *Unified School Dist. No. 480 v. Epperson,* 583 F.2d 1118, 1122–23 (10th Cir.1978). Injunctive relief, by contrast, does not impose liabilities on county or local officials, much less on the state. Hence, suits challenging the constitutionality of a local official's actions have long been allowed, *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and an injunction governing the official's future conduct may be granted, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ The defendants, however, argue that *Pennhurst State School & Hospital v. Halderman,* — U.S. —, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) limits these principles and applies to the present case. *Pennhurst* involved a class action brought by mentally retarded citizens challenging the fact and condition of confinement in a state institution. The Supreme Court held that the 11th Amendment barred the suit, even though the state itself was not named as a defendant, because the state was the real, substantial party in interest and the relief sought would operate against the state. In view of the nature of the state's interest, the court regarded any relief awarded against county officials as being partial and incomplete. It therefore refused to grant an injunction against them. 104 S.Ct. at 920–21.

The distinction between *Pennhurst* and this case is that in the former the plaintiff was attempting to coerce state officials into conforming with state law. In this case the Federal Land Bank seeks to obtain compliance with federal law (12 U.S.C. § 2055). The questions presented are thus more federal in nature than those raised in *Pennhurst.* The state is therefore less implicated, and has a lesser interest, in those proceedings. Nor will its absence prevent me from granting complete relief, as there is no necessity to obtain relief from the state itself. The injunction requested will affect only the counties, who are empowered by Colo.Rev.Stat. § 30–11–107(1)(d) to levy the taxes at issue here, and to spend the proceeds derived therefrom. Thus the general rule that the 11th Amendment does not bar suits for injunctive relief against county officials is applicable to this case.

■ The argument that the counties are protected as the *alter ego* of the state also fails. The wording of the 11th Amendment does not apply to suits brought by the United States against a state or a state's political subdivisions. *United States v. Texas,* 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892). An action brought by an arm of the government or an instrumentality thereof is similarly privileged. *Hodgson v. Bd. of Education,* 344 F.Supp. 79, 86 (D.N. J.1972). Any other result would indirectly threaten the Supremacy Clause, U.S. Const. Art. VI, and render meaningless those cases allowing an instrumentality to challenge a state tax despite the Tax Injunction Act.

## IV. JURISDICTION OVER THE 29 NONPRODUCING COUNTIES

■ Defendants' next argument is that there is no existing "case" or "controversy," U.S. Const. Art. III § 2, involving the 29 nonproducing counties. While it is true that no present controversy exists between the bank and those 29 counties, it does not follow that any determination of rights will be based on *assumed* facts. On the contrary, the facts are known. They are the same facts as are involved in the suit against the 21 counties in which there is production. They are simply *future* facts. Many cases have held that a court can issue a declaratory judgment when the "ripening seeds" of an actual and inevita-

ble controversy are present. *See* 22 Am. Jur.2d, *Declaratory Judgment* § 11 (1965 & Supp.1983); *see also Cheesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393 (9th Cir.1982) (declaratory judgment respecting threats of future action). While no controversy involving any of the nonproducing counties is inevitable, the legal issues and facts on which they are based will be identical to those presented with respect to the 21 counties in the event of production. Interests of judicial economy strongly suggest that all counties be joined in this action.

### V. INDISPENSABLE PARTIES

■ Defendants next argue that the State of Colorado, the assessor and treasurer of each defendant county, and the state property tax administrator are indispensable parties. While plaintiff's royalty interests have been subjected to tax under statutes passed by the state, the tax is levied by the county board. Colo.Rev.Stat. § 30–11–107(d). Plaintiff may therefore obtain complete relief without joining the state. Indeed, the State Property Tax Administrator has admitted her lack of jurisdiction by letter to plaintiff's counsel. *See* Exhibit A, attached to bank's complaint.

The assessor and treasurer of each defendant county is an independent elected official. *See* Colo.Rev.Stat. § 30–10–801 & § 30–10–701. The former lists and values taxable property while the latter collects the tax. They both perform ministerial functions connected with the levy of the tax by the County Board. Complete relief can be granted without joining them as parties to this lawsuit.

It is therefore ORDERED that the motion to dismiss is denied. Defendants are ordered to answer the complaint within ten (10) days from the date of this order.