Argued September 12, affirmed December 30, 1966

# BAKER PRODUCTION CREDIT ASSOCIATION v. STATE TAX COMMISSION

421 P. 2d 984

*Ralph R. Bailey* and *Frank E. Magee,* Portland, argued the cause for appellant. On the brief were Ralph R. Bailey and Morrison & Bailey, Portland.

*Gerald F. Bartz,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General and Carlisle B. Roberts, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PER CURIAM.

Plaintiff appeals from a decree of the Oregon Tax Court which sustained an order of the defendant tax commission disallowing plaintiff's deductions for additions to its bad debt reserves for the years 1958-1961.

We affirm the decree of the Oregon Tax Court and adopt its opinion, which was reported in 2 OTC 205 (1965), and which reads as follows:

"These suits, which have been consolidated for decision, are for refunds of corporate excise taxes for the years 1958 to 1961 inclusive. They arise as a result of the defendant's disallowance of additions to bad debt reserves as deductions in computing plaintiff's income subject to excise tax.

The Production Credit Associations (hereinafter called PCA's), of which plaintiff is a member, were authorized by Congress under the Farm Credit Act of 1933, to give financial assistance to farmers and ranch-

ers affected by the depression. Several hundred were established in the United States.

Originally, all of the capital stock was held by the United States and the PCA's were tax exempt. The government, however, gradually retired as the holder as ranchers purchased the stock. 12 USCA § 1138(c)[1] removed the tax exemption for the individual PCA's after the government retired its stock. Plaintiff's exemption was removed in 1950 and it is conceded in this case that plaintiff is subject to corporate excise tax.

The first issue is whether or not the plaintiff is entitled to deduct each year the additions to its bad debt reserve until such reserve equals 3.5 percent of the loans outstanding at the end of the fiscal year.

The issue requires a brief background of the PCA's history in regard to bad debt reserves. Since 1945, the first year that any PCA was required to file a federal income tax return, the Internal Revenue Serv-

---

[1] "The Central Bank for Cooperatives, and the Production Credit Association, and Banks for Cooperatives, organized under this chapter, and their obligations, shall be deemed to be instrumentalities of the United States, and as such, any and all notes, debentures, bonds, and other such obligations issued by such banks or associations shall be exempt both as to principal and interest from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority. Such banks or associations, their property, their franchises, capital, reserves, surplus, and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property of such banks or associations shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed. The exemption provided herein shall not apply with respect to any production credit association or its property or income after the class A stock held in it by the Governor has been retired, or with respect to any bank for cooperatives or its property or income after the stock held in it by the United States has been retired. June 16, 1933, c. 98, Title VI, § 63, 48 Stat. 267; Aug. 11, 1955, c. 785, Title II, § 205, 69 Stat. 663; July 26, 1956, c. 741, Title I, § 105(o), 70 Stat. 666."

ice had questioned the reasonableness of their bad debt reserves. Deductions from income for additions to the reserves were disallowed and suits resulted. By 1961 over 20 suits on this issue had been filed in federal courts. Various percentages of bad debts to outstanding loans were established as reasonable by the courts. In order to avoid the variety of percentages and the expense of the individual litigation in each case, the PCA's presented their problem to Congress. (S. Rep. No. 747, August 16, 1961, 87th Congress, 1st Session.)

This action resulted in the amendment, in 1961, of 12 USCA § 1131(f)(a), providing as follows:

"(a) Each production credit association shall, at the end of each fiscal year, apply the amount of its earnings for such year in excess of operating expenses (including provision for valuation reserves against loan assets in an amount equal to one-half of 1 percentum of loans outstanding at the end of the fiscal year, to the extent that earnings for the year in excess of other operating expenses permit, until such reserves equal or exceed 3½ percentum of loans outstanding at the end of the fiscal year beyond which 3½ percentum further additions to such reserves are not required but may be made), first, to the restoration of the impairment, if any, of capital; and, second, to the establishment and maintenance of a surplus account, the minimum amount of which shall be prescribed by the Federal Intermediate Credit Bank." As Amended October 3, 1961, Pub. L. 87-343, § 2(2), 75 Stat. 758.

The plaintiff contends that the above statute commands the defendant Tax Commission, in addition to the Internal Revenue Service, to allow them to deduct from income, additions to their bad debt reserve until such reserve reaches 3.5 percent of the loans outstanding at the end of the year.

ORS 317.280, pertaining to bad debts states:

"(1) In computing net income there shall be allowed as a deduction any debt which becomes worthless within the taxable year, and charged off in accordance with regulations prescribed by the commission (or, in the discretion of the commission, a reasonable addition to a reserve for bad debts)."

Regulation 316.330 (1)-(E) on this subject provides:

"A taxpayer reporting on the cash receipts and disbursements basis is not ordinarily permitted to take deductions for additions to a reserve for bad debts. Permission to establish such a reserve may be granted by the commission upon written request, but only upon a showing of good cause therefor and non-distortion of income resulting therefrom.

"Taxpayers on the accrual basis who have established the reserve method of treating bad debts may, in the discretion of the commission, deduct from gross income a reasonable addition to the reserve rather than the specific bad debt items. (However, see Reg. 316.330(1)-(C).) No deduction may be taken for an addition to a reserve for bad debts arising from isolated or casual transactions, or to a reserve for contingent losses.

"What constitutes a reasonable addition to a reserve for bad debts depends upon the facts in each case, and varies according to the class of business and condition of business prosperity. It will depend primarily upon the total amount of debts outstanding as of the close of the taxable year, those arising currently as well as those arising in prior taxable years, and the total amount of the existing reserve. In case subsequent realization upon outstanding debts prove to be more or less than estimated at the time of the creation of the existing reserve, the amount of the excess or inadequacy in the existing reserve should be reflected in the determination of the reasonable addition necessary in the taxable year. A taxpayer using

the reserve method should make a statement in his return showing the volume of his charge sales or other business transactions for the year, the percentage of the reserve to such amount, the total amount of notes and accounts receivable at the beginning and close of the tax year, and the amount of the debts which have been ascertained to be worthless and charged against the reserve account during the tax year.

"Taxpayers using the reserve method of treating bad debts shall include in gross income in the year of receipt payments received on debts charged off and deducted in years prior to the change to the reserve method, and shall credit to the reserve in the year of receipt payments received on bad debts charged off, but not otherwise deducted, except by reasonable additions to the reserve. To the extent that recoveries are so credited to the reserve, the deduction from income of the addition to the reserve for that year shall be reduced."

It should be emphasized at this point that the defendant Tax Commission is not concerned with the amount of reserve for bad debts that the plaintiff accumulates, but it has objected to and disallowed the yearly additions to the reserve as deductions from the plaintiff's income subject to excise tax.

The following is a summary of the bad debt reserves for each year in question as established by plaintiff:

| | Loans Outstanding | Additions to Reserve | Reserve Balance | % Bad Debt Loss Res. to Outstanding Loans |
|---|---|---|---|---|
| 12/31/58 | 5,711,742.25 | 39,574.68 | 200,636.90 | 3.5127% |
| 12/31/59 | 6,311,012.27 | 17,978.10 | 218,615.00 | 3.4640% |
| 12/31/60 | 7,453,447.09 | 34,273.04 | 252,888.04 | 3.3929% |
| 12/31/61 | 8,235,778.93 | 35,364.96 | 288,253.00 | 3.5000% |

In the Congressional hearings and report on the bill which resulted in the 3.5 percent reserve allowance, all references are to litigation in the federal courts arising out of disagreements with the Internal Revenue Service. No mention is made of state courts. Senate Hearings on S. 1927, June 1961; S. Rep. No. 747, August 16, 1961, 87th Congress, 1st Session; H. R. No. 1112, September 5, 1961.

The original statute, 12 USCA § 1138(c), *supra,* specifically provides for the exemption (before the government retired) from "State, Territorial, or local taxing authority."

In addition, it is conceded by the parties that the PCA's became subject to state taxation whenever the government ownership of the stock was terminated. What state taxation? The answer has to be the applicable tax statutes established by the state legislature and the regulations promulgated by the State Tax Commission.

It would seem inconsistent to say that the intention of Congress was to subject the PCA's to state taxation when the government stock was retired and then to argue that the state law and regulations do not apply. To apply the 3.5 percent minimum reserve in this case to the state would have the effect of negating ORS 317.280 on bad debt reserves and the regulations of the State Tax Commission on the same subject. It would place PCA's in Oregon in an entirely different category compared to other corporations.

The PCA's are in exactly the same position in Oregon today as they were with the Internal Revenue Service prior to 1961 and the passage of § 1131(f)(a) by Congress granting them the 3.5 percent reserve. If, because of their unique loan problems, they should

be entitled to a fixed percent of reserve then the matter becomes a legislative and not a judicial problem. Furthermore, this Oregon Tax Court does not feel it has the authority to include states in the federal statute when Congress itself did not do so.

■ It is this court's conclusion that the plaintiff is subject to the Oregon statutes and regulations and that 12 USCA § 1131(f)(a) does not grant plaintiff an automatic 3.5 reserve in Oregon.

The next issue is whether the amounts added each year to the reserve and deducted from income are reasonable additions to the reserve. The plaintiff has alleged that the defendant acted arbitrarily and abused its discretion in disallowing the deduction for the additions to the reserve. ORS 317.280, *supra,* requires the addition to the reserve to be reasonable and Regulation 316.330(1)-(F), *supra,* states that a reasonable addition depends on the facts of each case.

■ Plaintiff's principal business is financing livestock ranchers and row crop farmers on a short term production basis. Generally, the loans are secured by chattel mortgages on the cattle and machinery and are repaid upon the sale of the crop or livestock. In some instances, the loans are carried over from year to year for various reasons. The loans are classified and approximately one-third were designated as Class C loans or loans with a "major weakness." However, the evidence showed that from 1934 to the time of trial the plaintiff had lost only $496.00. As one of plaintiff's witnesses testified this is "a tremendous loss record." The plaintiff argues that consideration should be given to the fact that banks and PCA's were bankrupt during the 1930's; that the cattle market fluctuates and livestock and crops are affected by disease

and drought; that they are in a peculiar field in confining their loans to ranchers and have more risk than commercial banks. The court agrees and the Tax Commission Regulation (316.330(1)-(E), *supra*) requires a consideration of all the facts. However, it also requires consideration of the loss record, the total amount of the existing reserve and the fact that it is not a reserve for contingent losses. *Oregon Mutual Savings Bank v. Commission,* 2 OTR Adv Sh 131, 134-135, (1965).

It could be argued that the auditor for defendant acted arbitrarily and not in accordance with the Tax Commission's regulations when he disallowed approximately $29,000 of the $39,574.68 claimed by plaintiff as an addition to the reserve in 1958. This action, apparently, was based on similar action taken by the Internal Revenue Service and not upon a consideration of the facts as required by the regulations. However, the opinion and order of the Tax Commission disallowing the $29,000 appears to be based on valid grounds and in compliance with the regulations.

■ After considering all the facts mentioned above, including the amount of Class C loans, the loss experience of plaintiff and the amount of the reserve, it is this court's conclusion that the defendant did not abuse its discretion in disallowing the additions to the yearly bad debt reserve as deductions from plaintiff's income subject to excise tax for the years in question."

Affirmed.

SLOAN, J., dissenting.

Study of the history, purposes and expressed Congressional policy relating to the production credit associations causes me to believe that the 1961 amend-

ment to 12 USCA § 1131 (f) (a) was intended to exempt the statutorily fixed debt reserves from any form of taxation, whether state or federal.

In addition, the record in this case clearly indicates that the commission failed to apply its own regulations in fixing the reasonable amount of debt reserve allowed to plaintiff. I would reverse.