# IN THE OREGON TAX COURT

## BAKER PRODUCTION CREDIT ASSOCIATION
*v.*
## DEPARTMENT OF REVENUE
(TC 2333)
## KLAMATH PRODUCTION CREDIT ASSOCIATION
*v.*
## DEPARTMENT OF REVENUE
(TC 2334)

William D. Okrent, Bernard F. Bednarz & Assoc., P.C., Salem, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered February 13, 1986.

**CARL N. BYERS, Judge.**

These cases, which involve the same legal issue, have been consolidated for purposes of trial. Inasmuch as there is no dispute as to the facts, each of the parties has filed a motion for summary judgment. The parties have stipulated that certain documents shall be part of the record for purposes of the summary judgment proceedings. Counsel have also briefed the legal issues involved.

Both plaintiffs are federally chartered production credit associations (PCAs) located in Oregon. Both are subject

to Oregon's corporate excise tax imposed by ORS chapter 317. The issue in both cases concerns the amount that plaintiffs may deduct on their Oregon corporate excise tax returns as a reserve for bad debts for the year 1978 (Baker PCA also concerns the year 1979). A brief review of the legal history will be helpful in understanding the issues.

Prior to 1961, PCAs, like other lending institutions, set aside reserves for bad debts under a "reasonable addition" test, theoretically based upon the lending institution's experience. This blurry standard resulted in numerous inconsistent court decisions. In response to this unsatisfactory situation, in 1961 Congress enacted 12 USCA § 1131(f)(a). With only inconsequential changes in the language, this provision was later reenacted as 12 USCA § 2095(a), which now reads as follows:

"(a) Each production credit association at the end of each fiscal year shall apply the amount of its earnings for such year in excess of its operating expenses (including provision for valuation reserves against loan assets in an amount equal to one-half of 1 per centum of the loans outstanding at the end of the fiscal year to the extent that earnings in such year in excess of other operating expenses permit, until such reserves equal or exceed 3 1/2 per centum of the loans outstanding at the end of the fiscal year, beyond which 3 1/2 per centum further additions to such reserves are not required but may be made) first to the restoration of the impairment, if any, of capital; and second, to the establishment and maintenance of the surplus accounts, the minimum aggregate amount of which shall be prescribed by the federal intermediate credit bank." (PL 92-181, Title II, § 2.14, Dec 10, 1971, 85 Stat 600.)

On the basis of the federal statute, PCAs utilized the objective one-half of one percent standard on their federal corporate income tax returns. This resolved the dispute with the Internal Revenue Service. However, it did not resolve the dispute with the state. The state did not automatically adopt the federal percent test, but continued to apply the "reasonable" test for additions to reserves. As disclosed by the decision in *Baker Prod. Cr. Ass'n v. Tax Com.,* 245 Or 352, 421 P2d 984 (1966) ( which adopted the Tax Court's opinion as its own): at pages 358-359:

"The PCA's are in exactly the same position in Oregon today as they were with the Internal Revenue Service prior to

1961 and the passage of § 1131(f)(a) by Congress granting them the 3.5 percent reserve. If because of their unique loan problems they should be entitled to a fixed percent of reserve, then the matter becomes a legislative and not a judicial problem. Furthermore, this Oregon Tax Court does not feel it has the authority to include states in the federal statute when Congress itself did not do so.

"It is this court's conclusion that the plaintiff is subject to the Oregon statutes and regulations and that 12 USCA § 1131(f)(a) does not grant plaintiff an automatic 3.5 reserve in Oregon."

A decade passed before the law was changed. In 1977 the Oregon legislature enacted ORS 317.277, the relevant portions of which are as follows:[1]

"(1) Subject to subsection (2) of this section, in computing net income, a federally chartered production credit association shall be allowed a deduction under this chapter in an amount equal to *the amount it is required* under federal law *to add to its bad debt reserves* during the taxable year.

"(2) The deduction under this section shall be in lieu of any deduction allowable for the taxable year under ORS 317.280. If a production credit association elects the deduction for additions to bad debt reserves allowed under subsection (1) of this section for any year, the election shall be binding upon the association for all subsequent taxable years unless the department agrees to a termination of the election." (Emphasis supplied.)

■ The dispute in this case arises from the late birth of ORS 317.277. With the enactment of the federal legislation in 1961, the PCAs began setting aside and deducting on their federal returns the mandated reserve of one-half of one percent of their outstanding loans. By the time ORS 317.277 was enacted, many of the PCAs had reached the minimum total reserve of three and a half percent. Any subsequent required additions would be due only to increases in the amount of outstanding loans. For example, in 1978, Klamath PCA had

---

[1] 1977 Or Laws ch 506. It should be noted that section 3 provided:

"This Act is applicable to all tax years beginning with January 1, 1976, the return for which is open to adjustment on or after the effective date of this Act."

With the adoption of the Internal Revenue Code as the basic measure of the Oregon corporate excise and income tax law in 1983, ORS 317.277 was no longer required and was repealed. 1983 Or Laws ch 162, § 57.

outstanding loans of $29,252,642.98. One-half of one percent of this amount is $146,263.21. However, Klamath PCA was required to set aside only $86,959.15 to reach the minimum reserve of three and a half percent of its outstanding loans.

The issue before the court, as framed by the parties, is whether ORS 317.277 adopts the standard set forth in the federal law of one half of one percent, or whether it adopts the *amount* required to be set aside by the federal law.

Plaintiff contends that the intent of the Oregon legislature in 1977 was to give PCAs "a tax break" for a time period until their state corporate excise tax deductions for bad debt reserves equalled or totaled three and a half percent of their outstanding loans. Defendant, on the other hand, contends that ORS 317.277 does not provide a fresh start for state corporate excise tax purposes but is limited to the federal corporate income tax deduction.

The court does not agree with either party's point of view. The court sees no ambiguity in the statutes. ORS 317.277 refers to a federal law to determine the amount that is deductible. The federal law referred to is 12 USCA § 2095. That law is not directed or tied to income taxation. Rather, it mandates the amounts that must be set aside for "valuation reserves." As shown by *Baker Prod. Cr. Ass'n v. Tax Com., supra,* whether a PCA may take an excise tax deduction for amounts placed in reserve depends upon the state excise tax laws. In this case, ORS 317.277(1) allows a deduction, but only to the extent that federal law *requires* an *amount* to be placed in reserve. If no addition to reserves is required, no deduction is allowed under ORS 317.277(1) regardless of any other fact or consideration. It should be noted that section 2095 requires a minimum reserve, but provides that a PCA "may" set aside additional amounts (presumably dependent upon experience or need.)

■     Plaintiffs' interpretation of ORS 317.277 would require adding language to adopt the formula expressed in the federal statute and ignore the amounts required and actually set aside as reserves. The court cannot add to or omit words from a statute. ORS 174.010. Likewise, by referring to a statute for PCAs that is not an income tax statute, the Oregon deduction may or may not be the same as the amount deducted on a PCA's federal income tax return.

Plaintiffs cite the legislative history of ORS 317.277 and point to comments of legislators and witnesses who testified as to the purposes and consequences of the proposed legislation. While legislative history may be a valuable extrinsic aid in interpreting ambiguous language or a specially defined term, it is unnecessary where the statute is clear on its face. The starting point in every case of determining legislative intent, and the ending point in this case, is the language itself. *Whipple v. Howser,* 291 Or 475, 632 P2d 782 (1981). Applying the literal and common meaning of the terms in this case does not produce an absurd or unreasonable result. *Corbett Inves't Co. v. State Tax Com.,* 181 Or 244, 181 P2d 130 (1947). If the Oregon legislature had intended to give PCAs a "fresh start" for purposes of their state excise tax, it could have easily done so. In fact, the legislature must have recognized that substantial amounts had been actually set aside as reserves since 1961 when the federal law was enacted. If it had intended a fresh start for Oregon excise taxes, it would have seen the need to expressly establish a new or separate standard for the Oregon deductions.

In summary, ORS 317.277 does not determine the Oregon deduction by the amount of the federal income tax deduction or by the formula for reserves under the federal law. The deduction is determined by the amount that the PCA is "required" to set aside under section 2095. It may be possible under the Internal Revenue Code for a PCA to deduct an amount in excess of the minimum provided in section 2095 if it can establish that it is a "reasonable addition." IRC § 166. Rev Rul 70-138, 1970-1 CB 39. In contrast, for Oregon excise taxes (for the years in question), PCAs may elect to come under ORS 317.277, which provides a fixed deductible amount or rely upon the old "reasonable addition" standard contained in ORS 317.280. If a PCA elects to come under ORS 317.277, it may deduct the amount provided by section 2095 and no more, regardless of the circumstances.

Defendant's motion for summary judgment shall be granted and plaintiffs' motions for summary judgment shall be denied. Costs to neither party.