928 F.2d 399
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver
for San Marino Savings and Loan Association,
Plaintiff-Appellee,
v.
QUALITY HOTELS AND RESORTS, INC., Defendant-Appellant,
and
Quality Inns, Inc.; Quality Inns International, Inc., Defendants.
 No. 90-2391.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1991.
Decided March 11, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Joseph H. Young, Senior District Judge. (CA-86-1866-Y)
 David Foxwell Albright, Semmes, Bowen & Semmes, Baltimore, Md., argued for appellant. Harry M. Rifkin, Semmes, Bowen & Semmes, Baltimore, Md., on brief.
 Michael Hugh Krimminger, Melrod, Redman & Gartlan, P.C., Washington, D.C., argued for appellee; Thomas G. McGarry, Pamela L. Sherman, Melrod, Redman & Gartlan, P.C., Washington, D.C.; Ann S. DuRoss, Assistant General Counsel, Colleen B. Bombardier, Senior Counsel, Gregory E. Gore, Counsel, John David Ferrer, Counsel, Federal Deposit Insurance Corporation, Washington, D.C. on brief.
 D.Md., [APPEAL AFTER REMAND FROM, 876 F.2d 353]
 AFFIRMED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Quality Hotels and Resorts, Inc. ("Quality") appealed from an order granting summary judgment in favor of the Federal Deposit Insurance Corporation ("FDIC"). Finding no error in the district court's order, we affirm.
 
 I.
 
 2
 Silver Creek, a ski resort in Slatyfork, West Virginia, was owned by a corporation called American Resort Services ("ARS"). ARS began building the Silver Creek project with a $27,000,000 loan from San Marino Savings & Loan Association ("San Marino"). The loan was secured by a Security Agreement covering:
 
 
 3
 [a]ll personal property, fixtures, machinery, equipment, furniture, furnishings, ski lifts, snowmaking equipment, vehicles, and all rents, income and profits, now owned, leased, or hereafter acquired, situated on or about or incident to the operations of [Silver Creek].
 
 
 4
 San Marino filed a financing statement evidencing the Security Agreement on August 15, 1983 in accordance with Article 9 of the Uniform Commercial Code, W.Va.Code Sec. 46-9-101 et seq. (1963).
 
 
 5
 As part of the start-up operations, ARS entered into a Memorandum of Understanding with Quality Hotels and Resorts, Inc. ("Quality"). Under this Memorandum, Quality agreed to provide design and purchasing services to ARS relating to the development and management of facilities at Silver Creek.
 
 
 6
 Construction began on the project, and Silver Creek was partially open for business during the 1983-84 season with Quality running the operations as the on-site manager. During both the construction phase and the first season, Quality provided various services for ARS. It also purchased goods, equipment and services on behalf of ARS; the equipment, goods and services were used at Silver Creek. Quality was paid by ARS for some of the above equipment, goods and services; however, a large amount was not paid. Quality did not obtain a security agreement from ARS regarding the equipment, goods and services, nor did it file any financing statement under Article 9.
 
 
 7
 In February 1984, San Marino became aware that ARS was in financial trouble. San Marino continued to disburse loan funds, but did so for limited purposes. On February 3, 1984, San Marino went into receivership and the Federal Savings and Loan Insurance Corporation ("FSLIC") became conservator of San Marino. A final disbursement of loan funds (Disbursement 7) was made for the sole purpose of purchasing condominium furniture and furnishings.
 
 
 8
 Quality alleges that it continued to make purchases of goods and services, even though ARS had not paid it for goods and services already purchased and being used at Silver Creek. Quality asserts that those purchases were required to keep the resort open during the 1983-84 season.
 
 
 9
 On February 27, 1984 Quality stopped purchasing for ARS. Quality then drew down on an escrow account over which it had control to reimburse itself for some of the moneys owed by ARS. The money in that account was the above described Disbursement 7, which was to be used solely to buy furniture and furnishings. On May 4, 1984, FSLIC demanded an accounting from ARS regarding the amounts withdrawn by Quality.
 
 
 10
 On December 25, 1984, FSLIC was appointed Receiver of San Marino. Thereafter, ARS defaulted on the loan from San Marino. On October 25, 1985, the Receiver foreclosed upon the loan. At the foreclosure sale, FSLIC purchased the real and personal property of Silver Creek for $17,100,000. Included in the property purchased at the foreclosure sale were some of the goods and equipment "provided" by Quality to ARS, for which Quality had not been paid.
 
 
 11
 On April 17, 1986 FSLIC sued Quality in the Circuit Court of Maryland for Montgomery County seeking recovery of the funds misappropriated by Quality from Disbursement 7. Quality removed the action to the United States District Court for the District of Maryland. Quality filed a counterclaim for quantum meruit and conversion. This counterclaim was dismissed by the district court for failure to exhaust administrative remedies. The district court granted FSLIC's claim for misappropriation of funds against Quality.
 
 
 12
 On appeal, the Fourth Circuit affirmed the granting of FSLIC's claim, but vacated the dismissal of the counterclaim. F.S.L.I.C. v. Quality Inns, Inc., 876 F.2d 353 (4th Cir.1989). Thereafter, Quality amended its counterclaim, increasing the amount it claimed to reflect the loss incurred as a result of the judgment granting FSLIC's claim.
 
 
 13
 On remand, FDIC moved for summary judgment on Quality's counterclaim.[1] The district court granted that motion, and this appeal followed.
 
 II.
 
 14
 On appeal, we review the district court's order granting summary judgment de novo. J.D. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir.1990); Higgins v. E.I. DuPont De Nemours & Co., 863 F.2d 1162, 1166-67 (4th Cir.1988). Therefore, we must determine whether summary judgment was appropriate in this case. See Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547 (5th Cir.1987).
 
 
 15
 Summary judgment is appropriate in a case where there is no genuine dispute as to a material fact, and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); Miller, 906 F.2d at 973. On a motion for summary judgment, any inferences must be drawn in the light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).
 
 
 16
 In this case, the district court correctly granted summary judgment in favor of FDIC. Drawing any inferences in the light most favorable to Quality, it is clear that Quality has no cause of action against FDIC.
 
 III.
 
 17
 The district court granted summary judgment in favor of FDIC based upon three conclusions. They were that (1) FDIC was a secured creditor and was entitled to summary judgment as a matter of law under Article 9 of the Uniform Commercial Code ("UCC"); (2) Quality had no claim for unjust enrichment or quantum meruit; and (3) Quality had no claim against FDIC for conversion in light of FDIC's superior right to the collateral. We agree with the district court with respect to all three conclusions. Therefore, we affirm the district court's granting of summary judgment in favor of FDIC, adopting the district court's rationales. In addition, we address one issue which the district court failed to discuss in depth.
 
 
 18
 In its conclusion that Quality had no claim for unjust enrichment or quantum meruit, the district court based its holding upon Peerless Packing Co. v. Malone & Hyde, Inc., 376 S.E.2d 161 (W.Va.1988). Peerless involved the issue of whether there can be a claim of unjust enrichment against a secured creditor. In Peerless, the secured creditor had a perfected security interest in certain collateral. The creditor realized on the secured collateral, and some of the unsecured creditors filed suit on the ground of unjust enrichment, among other things. The Supreme Court of Appeals affirmed the trial court's holding that a claim for unjust enrichment could not be had in a UCC case. A portion of the trial court's holding, cited by the Supreme Court of Appeals, was as follows:
 
 
 19
 First, the Court concludes as a matter of law that the plaintiffs cannot maintain this action, which is governed by Article 9 of the UCC, on a theory of recovery grounded upon the equitable doctrine of unjust enrichment. Evans Products Company v. Jorgensen, [245 Or. 352], 421 P.2d 978 (Oregon, 1966). The Court agrees with the rationale of the Oregon Supreme Court at p. 983 that "[T]he purpose and effectiveness of the UCC would be substantially impaired if interests created in compliance with UCC procedure could be defeated by application of the equitable doctrine of unjust enrichment.
 
 
 20
 Peerless, 376 S.E.2d at 164.
 
 
 21
 The Supreme Court of Appeals agreed with the above passage, affirming that ruling, and noted:
 
 
 22
 [A]lthough the result of disallowing an equitable unjust enrichment claim in such a case may appear harsh, the unsatisfied creditors ... could have protected themselves either by demanding cash payment for their goods, or by taking a purchase money security interest in the goods they delivered.
 
 
 23
 Id. Thus, the Peerless court held that the unsecured creditor could have no claim of unjust enrichment against the secured creditor.
 
 
 24
 The district court in the present case did not distinguish between claims for goods and claims for services when it held that Quality had no cause of action for unjust enrichment or quantum meruit based upon Peerless. Quality asserts that the district court erred in applying Peerless to Quality's counterclaim in full because $800,000 of its claim was for services, and services are not covered by the UCC. Under Quality's theory, the UCC does not apply to the $800,000 service part of the claim, and thus Quality can pursue its unjust enrichment claim for those services. We disagree.
 
 
 25
 It is true that the UCC covers security interest in goods, but not services. See W.Va.Code Sec. 46-9-102 (1966). However, Quality bought and rendered services for ARS, expecting to be reimbursed by them, pursuant to an express agreement between Quality and ARS. That agreement was expressed in the Memorandum of Understanding and also in the course of dealing between the two parties. In fact, ARS did reimburse Quality several times under that agreement, but failed to reimburse Quality at the time in question. Now, Quality asks us to hold that FDIC was unjustly enriched because Quality bought services for ARS under an express agreement, but was never reimbursed for those purchases.
 
 
 26
 In Rosenbaum v. Price Const. Co., 117 W.Va. 160, 184 S.E. 261 (1936), the Supreme Court of Appeals of West Virginia addressed this very issue. In Rosenbaum, the court held that the plaintiff could not recover against defendant Price under a theory of quantum meruit because the plaintiff had an express contract with a surety regarding the same subject matter:
 
 
 27
 [U]nder the facts here, plaintiff cannot recover from Price on the theory of a quantum meruit. That theory is based on an implied contract. An implied contract and an express one covering the identical subjectmatter cannot exist at the same time. If the latter exists, the former is precluded. Here plaintiff's express contract with the surety company precludes an implied contract with Price. The fact that Price was benefitted does not change the rule. "Implied undertaking cannot arise, as against one benefitted by work performed, when such work was done under a special contract with other persons."
 
 
 28
 184 S.E. at 263-64 (quoting Walker v. Brown, 28 Ill. 378, 81 Am.Dec. 287).
 
 
 29
 Although Rosenbaum talks in terms of quantum meruit and Quality's claim is phrased in terms of unjust enrichment the same principles apply. Quantum meruit and unjust enrichment are both forms of restitution. 1 E. Farnsworth, Contracts Sec. 2.20, at 148, 152 (1990). The Restatement of Restitution forecloses restitution claims--whether quantum meruit or unjust enrichment--for third party beneficiaries:
 
 
 30
 A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.
 
 
 31
 Restatement of Restitution Sec. 110 (1937).
 
 
 32
 In this case, there was an express contract between Quality and ARS regarding the same subject matter as Quality's attempted unjust enrichment claim. The contract was in the form of the Memorandum of Understanding coupled with the course of dealing between the two. According to the contract, Quality bought goods and services, and ARS reimbursed Quality for the purchases. Thus, Quality cannot recover on a theory of unjust enrichment for services it rendered under a valid contract with ARS, even though the services provided a benefit to a third party, FDIC, with whom Quality had no contract. Rosenbaum, 117 W.Va. at 165; Restatement of Restitution Sec. 110 (1937); 1 Farnsworth, Contracts Sec. 2.20 at 152.
 
 IV.
 
 33
 In conclusion, we adopt the reasoning of the district court in granting summary judgment to FDIC with one addition: Quality has no claim for unjust enrichment against the FDIC because of its valid, express contract with ARS.
 
 AFFIRMED
 
 
 [1]
 The FSLIC was abolished in 1989 and all of its assets and liabilities were transferred to the FSLIC Resolution Fund under the management of FDIC. Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101-73, 103 Stat. 183. Pursuant to section 401(f)(2) of the Act, FDIC is substituted as Receiver for San Marino and as party plaintiff and counterdefendant in this action