MONTANA LIVESTOCK PRODUCTION CREDIT ASSO-
CIATION, a Corporation, Plaintiff and Respondent, *v.*
The STATE OF MONTANA, the STATE BOARD OF
EQUALIZATION of the State of Montana, and DAN
FULTON, J. MORLEY COOPER, and JOHN C. ALLEY,
as members of and constituting said State Board of
Equalization of the State of Montana, Defendants and
Appellants.

No. 10661
Submitted March 2, 1964. Decided May 6, 1964.
Rehearing denied July 2, 1964.
393 P.2d 50

Forrest H. Anderson, Helena, John R. Kline (argued), Helena, for appellants

Toomey & Hughes, Helena, George T. Bennett (argued), Helena, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiff, which will hereinafter be referred to as P. C. A., in an action for a declaratory judgment declaring that the Montana Livestock Production Credit Association (P. C. A.) is exempt and immune from the payment of Montana Corporation License Tax as set forth in Chapter 15, Title 84, section 84-1501 et seq., Revised Codes of Montana 1947, as amended. The appellants here, defendants below, will hereinafter be referred to collectively as State Board.

Among the various things alleged in the complaint are: that the plaintiff P. C. A. is a corporation existing under the laws of the United States of America and is chartered by the Governor of the Farm Credit Administration and is engaged with other production credit associations in the function of extending and providing loans to farmers and ranchers. The income of P. C. A. is derived from the interest charged on the loans.

The allegations and admitted facts show that the P. C. A.'s management and functions are all prescribed by rules and regu-

lations of the governor of the Farm Credit Administration, an instrumentality of the federal government.

The initial capitalization to establish such an organization as P. C. A. is obtained through the federal government and is secured by the issuance of "Class A" stock. Such stock is nonvoting. The borrowers from P. C. A. are required to buy proportionate amount of "Class B" voting stock. "Class B" stock must be converted into "Class A" within two years after the holder ceases to be a borrower. Through this device the P. C. A.'s, which were set up to aid those farmers and ranchers unable to obtain credit in the depression years, have become more and more owned by the people it serves. In the case before us, as in many instances, the entire amount of "Class A" stock owned by the federal government has been retired and the corporation is now wholly owned by its individual stockholders.

In this case we have but two questions on appeal. Does the State of Montana have the *power* to tax P. C. A., after the entire amount of "Class A" stock owned by the federal government has been retired, for the privilege of carrying on its business in the State of Montana? If the State of Montana has the *power* to tax P. C. A. does subd. (k) of section 84-1501, R. C. M.1947, as amended, preclude the imposition of such tax?

To better appreciate the question involved we will set out the two statutes pertinent to this appeal. 12 U.S.C.A. § 1138c, states:

"The * * * Production Credit Associations, and Banks for Cooperatives, organized under this chapter, and their obligations, shall be deemed to be instrumentalities of the United States, and as such, any and all notes, debentures, bonds, and other such obligations issued by such * * * associations shall be exempt both as to principal and interest from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority. Such banks or associations,

their property, their franchises, capital, reserves, surplus, and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority * * *. The exemption provided herein shall not apply with respect to any production credit association or its property or income after the class A stock held in it by the Governor has been retired, or with respect to any bank for cooperatives or its property or income after the stock held in it by the United States has been retired."

Montana's statute, R.C.M.1947, § 84-1501, as amended, providing for taxing of corporations doing business within the state, provides:

"The term corporation includes associations, joint stock companies, common law trusts and business trusts which do business in an organized capacity whether created under and pursuant to state laws, agreements, declarations of trust. * * * every corporation, except as hereinafter provided, organized and existing under the laws of any other state or country, or the United States, and engaged in business in the state of Montana, shall annually pay for the exclusive use and benefit of the state of Montana a license fee for carrying on its business in the state of Montana of such percentage or percentages of total net income received by such corporation in the preceding fiscal year from all sources within the state of Montana as hereinafter set forth.

\*　\*　\*　\*　\*

"(k)　*In determining the license fee to be paid under this act, there shall not be included any earnings derived * * * from the exercise of any governmental function.*" (Emphasis supplied.)

The grounds of the decision below are that P. C. A. is an instrumentality of the United States; that P. C. A. is performing a governmental function; that R.C.M.1947, § 84-1501 subd. (k), precludes the collection of a corporation license tax; that

12 U.S.C.A. § 1138c, does "not provide and did not intend that the franchises of such association be subjected to taxation."

This very question arose and was decided in Columbus Production Credit Ass'n v. Bowers, 173 Ohio St. 97, 180 N.E.2d 1, cert. denied 371 U.S. 826, 83 S.Ct. 47, 9 L.Ed.2d 65. There it is stated:

"The association here is an instrumentality of the United States. It has inherent as well as specific statutory exemption from a state franchise tax. See Section 1138c, Title 12 U.S. C.A. (Farm Credit Act of 1933).

"An instrumentality of the United States may not be taxed by a state unless Congress has granted consent to the state to tax. McCulloch v. Maryland (1889), 4 Wheat. 316, 4 L.Ed. 579; Austin v. Aldermen (1869), 7 Wall. 694, 19 L.Ed. 224; California v. Central Pacific Rd. Co. (1888), 127 U.S. 1, 8 S.Ct. 1073, 32 L.Ed. 150.

"The Congress of the United States has granted consent to the state of Ohio to impose upon the Columbus Production Credit Association the tax authorized by Section 5733.01, Revised Code, by the language in Section 1138c, Title 12 U.S. C.A. (Farm Credit Act of 1933). The latter section first sets forth in statutory language the exemptions from taxation which are to be enjoyed by production credit associations, and then it sets forth in clear language under what conditions Congress consents to state taxation of such associations. This language is broad and plain, is not ambiguous, and is as follows:

" 'The exemption provided herein shall not apply with respect to any production credit association or its property or income after the class A stock held in it by the governor has been retired.' "

In the matter of waiver or consent it has also been said:

"It is well settled that the States cannot exercise this authority in respect to any of the instrumentalities which the general government may create for the performance of its consti-

tutional functions. It is equally well settled, that this exemption may be waived wholly, or with such limitations and qualifications as may be deemed proper, by the lawmaking power of the nation; but the waiver must be clear; and every well-grounded doubt upon the subject should be resolved in favor of the exemption.

"In respect to the class of cases to which the one before us belongs, the waiver is expressed in clear and unmistakable language." Austin v. Aldermen, 7 Wall. (U.S.) 694, 699, 19 L.Ed. 224.

The exemption removing portion of 12 U.S.C.A. § 1138c, was enacted July 26, 1956. This amendment is in clear and unmistakable language.

There is no necessity here to go into the myriad distinctions in taxation as is applied to licenses, excises, and franchises. In Equitable Life Assurance Co. v. Hart, 55 Mont. 76, on page 83, 173 P. 1062, on page 1064, this court held, the questioned tax to be "an excise upon the particular privilege of doing business in a corporate capacity * * *." Also see Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389.

An excise tax has been defined in Idaho Gold Dredge Co. v Balderston, 58 Idaho 692, 78 P.2d 105, 112, as:

" ' "Excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the support of government. The word has however come to have a broader meaning and includes every form of taxation which *is not a burden laid directly upon persons or property;* in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation." 26 R.C.L. 34, § 18.' Diefendorf v. Gallet, supra (51 Idaho 619, 10 P.2d 307]." (Emphasis supplied.)

This court knows of no valid reason why a state may not impose an excise tax upon an instrumentality of the United States so long as there has been federal permission granted to

do so. The fact that 12 U.S.C.A. § 1138c, states that "[t]he exemption provided herein shall not apply with respect to any *production credit association or its property or income*" [Emphasis supplied.], is to us a complete manifestation of this State's right to levy and collect this tax. The word "or" in the provision, above-quoted, points out that the three enumerated items are to be read in the disjunctive and not in the conjunctive. It is apparent here that the United States has granted the states the right to tax the income and property of a Production Credit Association in this narrow situation. It is also obvious to us that the exemption does not apply, in this instance, to the Production Credit Association itself. The fact that the word "franchise" is not specifically mentioned in the exemption removal portion of 12 U.S.C.A. § 1138c, is not as all persuasive as respondent P. C. A. would make us believe. Their argument on this point appears to be hypertechnical.

'. So long as the tax is reasonably laid and is not discriminatory nothing now exists which would, from the federal government's point of view, preclude this state from levying a fee from such Production Credit Association for carrying on its business in the State of Montana.

■ However, do our own statutes bar the collection of such a tax? We think not.

Subdivision (k) of section 84-1501, as amended, does state that "there shall not be included any earnings derived * * * from the exercise of any governmental function" in the determination of the fee to be paid under this act. But this must be interpreted in conjunction with 12 U.S.C.A. § 1138c, where it is said: "* * * Production Credit Associations * * * shall be deemed to be instrumentalities of the United States, *and as such*, * * * shall be exempt * * * from all taxation * * * now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority * * *." (Emphasis supplied.) The removal of this exemption, upon retirement of the "Class A" stock held by the agent of the United States, re-

quires the interpretation that for the purposes of section 1138c, such associations are no longer true "instrumentalities of the United States." By the same token, for the purposes of section 84-1501, such associations are no longer exercising governmental functions and are therefore subject to Montana's corporation license tax.

The necessity of the federally prescribed exemption for this P. C. A. no longer exists. This organization was created, nurtured, and protected by the United States. It has grown and prospered to the point of complete independence. This fact was recognized by the United States. Because of that fact and the competition such an organization affords, it can and should be prepared to pay its due to the society in which it stands.

For the foregoing reasons we reverse the decision of the district court and order that court to enter judgment in conformity with this opinion.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and DOYLE concur.