No. 95-1856

Farm Credit Services of Central Arkansas,  *
PCA; Farm Credit Services of Western    *
Arkansas, PCA; Eastern Arkansas Production*
Credit Association; and Delta Production  *
Credit Association,                              *
                                        *
           Appellees,               *
  v.                                  * Appeal from the United States
                                    * District Court for the Eastern
State of Arkansas                   * District of Arkansas.
                                    *
           Appellant.              *

Submitted:  November 13, 1995

Filed:    February 23, 1996

Before McMILLIAN and LOKEN, Circuit Judges and DUPLANTIER,[*] Senior District Judge.

DUPLANTIER, Senior District Judge:

Appellees, four Production Credit Associations (PCAs), brought suit in the United States District Court for the Eastern District of Arkansas against the State of Arkansas, seeking a declaratory judgment that they are exempt from state sales and income taxation and for an injunction prohibiting the state from imposing such taxes. The PCAs moved for summary judgment on the ground that there was no genuine issue of material fact with respect to the issue

[*]The HONORABLE ADRIAN G. DUPLANTIER, Senior United States District Judge for the Eastern District of Louisiana, sitting by designation.

of whether they were immune from state sales and income taxation because PCAs are statutorily declared instrumentalities of the United States and, absent express Congressional waiver, are entitled to immunity from such state taxation.

The state responded that Congressional declaration of PCAs as federal instrumentalities was insufficient to confer tax immunity and that waiver of immunity should be implied. The state further argued that it was necessary to make a factual inquiry into the governmental nature of PCAs in order to determine whether they are federal instrumentalities immune from state taxation. The District Court agreed with the PCAs and granted their motion for summary judgment.

We review the district court's grant of summary judgment de novo, and apply the same standard as applied by the district court. Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993). Summary Judgment is appropriate if the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-2553, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); Langley, 995 F.2d at 844.

## I. PCAs: Federal Instrumentalities Immune from State Taxation Absent Congressional Waiver

Production credit associations are expressly termed federal "instrumentalities" in relevant statutes[1] and case law[2]. Arkansas concedes that PCAs are federal instrumentalities, but contends

---

[1]The statute regarding taxation of production credit associations expressly designates them "instrumentalities" of the United States. In full, 12 U.S.C. § 2077 states:

> Each production credit association and its obligations are instrumentalities of the United States and as such any and all notes, debentures, and other obligations issued by such associations shall be exempt, both as to principal and

2

that PCAs resemble private corporations, and that the structure and objectives of the PCAs within the farm credit system indicate that their connection to the federal government is not so close as to confer upon them immunity from state taxation.

Arkansas relies upon United States v. New Mexico to support its contention that federal instrumentalities like PCAs do not implicitly merit federal immunity from state taxation. Arkansas contends that New Mexico dictates that federal instrumentalities like PCAs are immune from state taxation only if, like government contractors, they are so closely connected to the Government that they "stand in the Government's shoes."[3] Arkansas thus argues that the district court's grant of summary judgment was erroneous; Arkansas should have the opportunity to present factual evidence concerning the function, control, ownership, and operation of the PCAs. We disagree.

Beginning with M'Culloch v. State of Maryland, 4 Wheat. 316 (1819), the Supreme Court has repeatedly[4] held that because of the Supremacy Clause of the United States Constitution, states have no power to tax federally created instrumentalities absent Congressional authorization. "[T]he states have no power, by taxation or otherwise, to retard, impede, burden,

---

interest, from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States or any State, territorial, or local taxing authority, except that interest on such obligations shall be subject to Federal income taxation in the hands of the holder.

[2]"The PCA is an instrumentality of the United States. 12 U.S.C. § 2091 (1982)." Rohweder v. Aberdeen Prod. Credit Assoc., 765 F.2d 109, 113 (8th Cir. 1985); see Schlake v. Beatrice Prod. Credit Assoc., 596 F.2d 278, 281 (8th Cir. 1979).

[3]See infra note 5.

[4]See, e.g., United States v. State Tax Comm'n of Miss., 421 U.S. 599, 605, 95 S.Ct. 1872, 1876, 44 L.Ed.2d 404 (1975); First Agric. Nat. Bank v. State Tax Comm'n, 392 U.S. 339, 340, 88 S.Ct. 2173, 2174, 20 L.Ed.2d 1138 (1968), Department of Employment v. United States, 385 U.S. 355, 360, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966); see also United States v. City of Columbia, 914 F.2d 151, 153 (8th Cir. 1990).

or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared." Id. at 436.

The proprietary functions and other attributes of the PCAs have no bearing on their status as federal instrumentalities immune from state taxation. The Supreme Court has made it clear that "the Federal Government performs no 'proprietary' functions. If the enabling Act is constitutional and if the instrumentality's activity is within the authority granted by the Act, a governmental function is being performed." Federal Land Bank of Wichita v. Bd. of County Comm'rs, 368 U.S. 146, 150-51, 82 S.Ct 282, 286, 7 L.Ed.2d 199 (1961) (citing Federal Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 102, 62 S.Ct. 1, 5, 86 L.Ed. 65 (1941)). Arkansas makes no claim that the PCAs or their activities are unconstitutional. Thus, no further review or factual development of the PCAs' functions or objectives is necessary.

Arkansas incorrectly contends that the reasoning of United States v. New Mexico applies to PCAs. 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982). In New Mexico, the Supreme Court clarified the test for determining which government contractors merit immunity from state taxation[5]. The Court granted certiorari solely "to consider the seemingly intractable problems posed by state taxation of federal contractors." 455 U.S. at 730. The Court thus considered and discussed the objectives, functions, and ownership of the contractors in light of the clarified standard after concluding that the contractors were not "instrumentalities" of the United States[6].

---

[5]For such government contractors, "tax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." 455 U.S. at 735. In other words, "to resist the State's taxing power, a private taxpayer must actually 'stand in the Government's shoes.'" Id. at 736. (citing City of Detroit v. Murray Corp., 355 U.S. 489, 503, 78 S.Ct. 458, 491, 2 L.Ed.2d 441 (1958)).

[6]The Court also noted that the United States, the party seeking the declaratory judgment that certain advanced funding to the contractors was not taxable by New Mexico,

4

Id. at 739-40.  By contrast, PCAs are federal instrumentalities, clearly

designated as such by federal statutes. Thus New Mexico is readily distinguishable as applicable to tax immunity cases involving federal contractors, not Congressionally created federal instrumentalities like PCAs[7]. Indeed, in New Mexico, the Court reaffirmed the rule that federal instrumentalities are exempt from state taxation[8].

## II. Congress Made No Express Waiver of the PCAs' Tax Immunity.

In order to subject federal instrumentalities such as PCAs to state taxation, Congress must enact a clear waiver of their exemption. Department of Employment v. United States, 385 U.S. 355, 360, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966). "[W]here there is federal immunity from taxation, Congress must express a clear, express, and affirmative desire to waive that exemption." Federal Reserve Bank of St. Louis v. Metrocentre Improvement Dist. #1, 657 F. 2d 183, 186 (8th Cir. 1981) (citing United States v. City of Adair, 539 F.2d 1185, 1189 (8th Cir. 1976), cert. denied, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed. 571 (1977)), aff'd, 455 U.S. 995, 102 S.Ct. 1625, 71 L.Ed.2d 857 (1982). The only congressional enactment which currently deals with state taxation of PCAs states that all notes, debentures, and other obligations of the associations are exempt from state taxes. 12 U.S.C. § 2077 (quoted in full, supra). Prior versions of statutes dealing with taxation of PCAs expressly exempted their "capital, reserves, surplus, and other funds, and their income." Farm Credit Act of 1971, Pub. L. No. 92-181, §

did not claim that the contractors were federal instrumentalities. Id. at 725.

[7]The Ninth Circuit has also distinguished New Mexico for similar reasons, noting that the case applied to "mere private contractor[s]," and not to a "United States instrumentality" like the American National Red Cross. United States v. City of Spokane, 918 F.2d 84, 87 (9th Cir. 1990), cert. denied, 501 U.S. 1250, 111 S.Ct. 2888, 115 L.Ed.2d 1053 (1991).

[8]The Court began its explanation of federal tax immunity with the "one constant" in the discussion: "a State may not, consistent with the Supremacy Clause, U.S.Const., Art. VI, cl. 2, lay a tax "directly upon the United States." Id. at 733 (citing Mayo v. United States, 319 U.S. 441, 447, 63 S.Ct. 1137, 1140, 87 L.Ed. 1504 (1943)). The Court also quoted an earlier case which stated that if government contractors became "so incorporated into the government structure as to become instrumentalities of the United States," they would "thus enjoy governmental immunity." Id. at 736 (quoting United States v. Boyd, 378 U.S. 39, 48, 84 S.Ct. 1518, 1524, 12 L.Ed.2d 713 (1964)).

6

2.17, 85 Stat. 583, 602 (1971); Farm Credit Act of 1933, Pub. L. No. 73-75, § 63, 48 Stat. 257, 267 (1933). Arkansas contends that because the current statutory provision no longer contains such additional express waiver language, Congress has waived the PCAs' exemption. The converse can be argued with greater force: the current version of § 2077 acknowledges that because of the Supremacy Clause express exemption of the PCAs from state taxation in the earlier statutes constituted unnecessary surplus language. Where Congress is silent, the tax immunity of federal instrumentalities from state taxation is implied. See Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 480, 59 S.Ct. 595, 598, 83 L.Ed. 927 (1939).

There is no provision in any statute, including 12 U.S.C. § 2077, which indicates an intent on the part of Congress to waive the PCAs' tax immunity as federal instrumentalities. Therefore, the PCA's, as instrumentalities of the United States, are immune to state taxation, and we affirm the district court's judgment to that effect.

LOKEN, Circuit Judge, dissenting.

I respectfully dissent. It is well-established that States may not tax agencies and instrumentalities of the United States absent Congress's consent. This principle was first articulated in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819), when the Court invalidated a discriminatory tax imposed on the Second Bank of the United States. Congress had not addressed the question in the statute, but the Bank's intergovernmental tax immunity was implied from the Supremacy Clause of the Constitution. Id. at 433.

In this century, the limit of this implied immunity has evoked sharp debate among Supreme Court Justices. See, e.g., First Agric. Nat'l Bank v. State Tax Comm'n, 392 U.S. 339 (1968); Graves v. New York ex rel. O'Keefe, 306 U.S. 466 (1939). But all have agreed on one principle -- it is for Congress to determine (i) which Federal instrumentalities should enjoy immunity from state and local taxation, and (ii) the extent of that immunity. As the Court said in United States v. City of Detroit, 355 U.S. 466, 474 (1958):

>Wise and flexible adjustment of intergovernmental tax immunity calls for political and economic considerations of the greatest difficulty and delicacy. Such complex problems are ones which Congress is best qualified to resolve.

In no area has the Court more consistently deferred to Congress than in the many cases dealing with state and local taxation of banks and other lending institutions chartered or established under Federal law. See First Agric. Nat'l Bank, 392 U.S. at 341-46; Federal Land Bank v. Board of County Comm'rs, 368 U.S. 146 (1961); Federal Land Bank v. Bismarck Lumber Co., 314 U.S. 95 (1941); Pittman v. Home Owners' Loan Corp., 308 U.S. 21 (1939). Some of these cases referred to the doctrine of implied constitutional immunity, but all were decided on the basis of careful statutory analysis. In my view, it is that principle of deference to the legislature that should guide us, not this court's potentially mischievous dictum in prior cases to the effect that "Congress must express a clear, express, and affirmative desire to waive" the implied constitutional immunity, supra p.5. With that essential preamble, I turn to the intricacies of the statutes here at issue.

The Farm Credit System is a nationwide network of borrower-owned cooperative lending institutions intended to serve the unique credit needs of the agricultural sector. See H.R. Rep. No. 425, 99th Cong., 1st Sess. 5 (1985), reprinted in 1985 U.S.C.C.A.N. 2587, 2591. The System began in 1916, when the Federal Farm Loan Act authorized the creation of twelve regional Federal Land Banks ("FLBs"). Pub. L. No. 64-158, § 4, 39 Stat. 360, 362 (1916). FLBs were to be partially owned and funded by the Federal government. Both the banks themselves, and their debt obligations, were given a broad statutory exemption from state and local taxes, except real property taxes:

>[E]very Federal land bank…including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank…. [F]arm loan bonds issued under the provisions of this Act shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation.…… Nothing herein shall be

8

construed to exempt the real property of Federal….. land banks… from either

State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed.

Id. § 26, 39 Stat. at 380.

FLBs were only authorized to make agricultural loans secured by first mortgages on farm lands. In 1923, Congress created the Federal Intermediate Credit Banks ("FICBs") to make other types of farm loans. FICBs received the same broad statutory tax exemption as FLBS. Pub. L. No. 67-503, § 210, 42 Stat. 1454, 1459 (1923). In 1987, Congress merged the FLBs and the FICBs into Farm Credit Banks. With minor changes in statutory language, Farm Credit Banks today enjoy the same statutory tax exemption first granted FLBs in 1916. See 12 U.S.C. § 2023.

This case involves Production Credit Associations ("PCAs"), first created by Congress in the Farm Credit Act of 1933 to provide short-to-intermediate-term loans directly to farmers and ranchers. See Pub. L. No. 73-98, § 20, 48 Stat. 257, 259-60 (1933). PCAs were initially capitalized and owned entirely by the Federal government, but Congress hoped ("expected" might be too strong a word given Depression-era economic conditions) that PCA excess earnings would be used to retire the government's stock, resulting in "local institutions in which farmers are participants and owners and through which necessary credit may be provided on a safe business basis and at reasonable cost." S. Rep. No. 124, 73d Cong., 1st Sess. 2 (1933). Congress reflected that hope in the express but limited tax exemption granted PCAs in the 1933 Act:

> Production Credit Associations… and their obligations, shall be deemed to be instrumentalities of the United States, and as such, any and all notes, debentures, bonds, and other such obligations issued by [PCAs] shall be exempt both as to principal and interest from all taxation… imposed by the United States or by any State, Territorial, or local taxing authority. [PCAs], their property, their franchises, capital, reserves, surplus, and other funds, and their income, shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property… shall be subject to Federal, State, Territorial, and

local taxation to the same extent as other similar property is taxed. <u>The exemption provided herein shall not apply with respect to any [PCA] or its property or income after the stock held in it by the [United States] has been retired</u>….

Pub. L. No. 73-98, § 63, 48 Stat. at 267 (emphasis added). This is a very different exemption than Congress granted the earlier farm credit institutions, FLBs and FICBS. Congress did not explain why it linked the PCAs' tax exemption to government ownership, and why it did not also impose that limitation on FLBs and FICBS.[1]

By the early 1960s, many PCAs were privately owned, and States began assessing various taxes, relying upon the last sentence of the above-quoted statute. Some PCAs resisted, claiming implied immunity as Federal instrumentalities. To my knowledge, every state appellate court to consider the question rejected the PCAs' position, concluding that the Federal statute was express consent for state taxation of privately-owned PCAs. <u>See, e.g.</u>, <u>Baker PCA v. State Tax Comm'n</u>, 421 P.2d 984 (Or. 1966); <u>Woodland PCA v. Franchise Tax Bd.</u>, 37 Cal. Rptr. 231 (Dist. Ct. App. 1964); <u>Montana Livestock PCA v. State</u>, 393 P.2d 50 (Mont. 1964); <u>Columbus PCA v. Bowers</u>, 180 N.E.2d 1 (Ohio), <u>cert. denied</u>, 371 U.S. 826 (1962).

By 1968 all PCAs were owned entirely by their borrower-members. <u>See</u> H.R. Rep. No. 593, 92d Cong., 1st Sess. (1971), <u>reprinted in</u> 1971 U.S.C.C.A.N. 2091, 2098. When Congress substantially rewrote these statutes in the Farm Credit Act of 1971, it left unchanged the differing exemptions granted to various System lenders. <u>See</u> Pub. L. No. 92-181, §§ 1.21, 2.8, 2.17, 3.13, 85 Stat. 583, 590, 597, 602, 608-09 (1971); H.R. Rep. No. 593, 1971

---

[1]The other differences in wording between the exemptions granted to FLBs and PCAs may simply reflect an evolution in drafting. The PCA form of exemption, without the critical last sentence dealing with retirement of the government's stock, is also found in the 1933 statute which created the government-owned Home Owners' Loan Corporation. <u>See</u> Pub. L. 73-43, § 4(c), 48 Stat. 128, 130 (1933).

U.S.C.C.A.N. at 21O7-13.[2] I suspect that PCAs operating under the 1971 Act routinely paid state and local taxes in the many States with statutes expressly taxing PCAs to the extent permitted by Federal law,[3] but the record in this case is regrettably silent on the point.

Congress again overhauled the farm credit statutes in 1985, responding to a crisis in the agricultural sector that threatened to bankrupt the System. See generally Colorado Springs PCA v. Farm Credit Admin., 967 F.2d 648, 650-52 (D.C. Cir. 1992). Congress made the Farm Credit Administration a more independent regulator, led by a three-member Board instead of a Governor. To conform the statute to this new agency configuration, prior references to the Governor needed to be deleted, including one that had been added to the last sentence of the PCAs' tax exemption provision, § 2.17 of the 1971 Act. However, rather than simply delete this reference to the Governor, Congress deleted the last two sentences of § 2.17. See Pub. L. No. 99-205, § 205(e)(16), 99 Stat. 1678, 1705 (1985). What remained, with minor subsequent changes,[4] was the statutory tax exemption for PCA obligations quoted in footnote 1 of the court's opinion, now codified at 12 U.S.C. § 2077.

This 1985 amendment deleted the express exemption that had been granted to a PCA and its income for so long as the PCA was Government-owned. The relevant Committee Report described this as merely a technical change. See H.R. Rep. No. 425 at 28-29, 1985 U.S.C.C.A.N. at 2615. Although more than the reference to the Governor was deleted, that is a logical explanation since there were *no* publicly-owned PCAs in 1985 eligible to enjoy the

---

[2]Of the other System lending institutions, Federal Land Bank Associations currently have the same exemption as Farm Credit Banks, 12 U.S.C. § 2098, while Banks for Cooperatives, first created in 1933 along with the PCAs, continue to have the same limited exemption as PCAs, 12 U.S.C. § 2134.

[3]See, e.g., Ala. Code § 40-16-2; Ind. Code § 6-5-12; N.Y. City Inc. Bus. Tax § 31; N.C. Gen. Stat. § 105-102.1; S.D. Cod. Laws § 10-43-2.1; Tenn. Code Ann. §§ 56-4-401 - 03.

[4]This section was reenacted in the Agricultural Credit Act of 1987, Pub. L. No. 100-233, § 401, 101 Stat. 1568, 1633 (1987).

deleted exemption. But this court has now construed a seemingly innocuous technical amendment as instead conferring an implied grant of blanket immunity from state and local taxation. In other words, the court construes the repeal of a limited express exemption, for which no PCA remained eligible, as the grant of a far broader implied exemption. Indeed, depending upon how one applies opaque dictum in the last paragraph of <u>McCulloch v. Maryland</u>, 17 U.S. at 436, the effect of this decision may be to exempt PCAs from state and local real property taxes, an exemption broader than any Farm Credit institution has enjoyed in the eighty-year history of the System.[5]

If normal principles of statutory construction are applied, it is obvious to me that the technical change intended by the 1985 amendments should not be construed as having the extraordinary substantive effect urged by the appellee PCAs. Because PCAs had no exemption from state and local taxation before the 1985 amendment (other than the exemption for their obligations), they should have no exemption under the statute as amended, 12 U.S.C. § 2077. But this court concludes otherwise, adhering -- in my view blindly -- to "no express waiver" dicta in earlier cases that discussed the implied constitutional immunity. This decision is illogical, and it is contrary to the overriding rule, grounded in constitutional and statutory

---

[5]The court creates this uncertainty despite a 1988 colloquy between a Member of the House of Representatives and the Member who had been Chairman of the House Committee on Agriculture in 1985:

> MRS. SMITH OF NEBRASKA. Is it your understanding that although local governments are not given specific authority to levy property taxes on property owned by [PCAs], they are not prevented from doing so?

> MR. DE LA GARZA. Mr. Speaker, I would inform the gentlewoman from Nebraska that that is the advice of our legal counsel and certainly consistent with my understanding of the [1985] conference.

134 Cong. Rec. H 462 (daily ed. Feb. 23, 1988). Although postenactment views of individual legislators are not usually reliable indicators of legislative intent, the House in 1988 was considering whether a further technical amendment was needed to clarify that PCAs, like all other Farm Credit System banks, are subject to real property taxation. So this colloquy is quite persuasive support for my interpretation of the 1985 amendment.

13

principles, that defining the extent of federal instrumentality tax immunity is a quintessentially legislative task.  Accordingly, I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.