LOKEN, Circuit Judge,
dissenting.
I respectfully dissent. It is well-established that States may not tax agencies and instrumentalities of the United States absent Congress’s consent. This principle was first articulated in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), when the Court invalidated a discriminatory tax imposed on the Second Bank of the United States. Congress had not addressed the question in the statute, but the Bank’s intergovernmental tax immunity was implied from the Supremacy Clause of the Constitution. Id. at 433, 4 L.Ed. 579.
In this century, the limit of this implied immunity has evoked sharp debate among Supreme Court Justices. See, e.g., First *965 Agric. Nat’l Bank v. State Tax Comm’n, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968); Graves v. New York ex rel. O’Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939). But all have agreed on one principle — it is for Congress to determine (i) which Federal instrumentalities should enjoy immunity from state and local taxation, and (ii) the extent of that immunity. As the Court said in United States v. City of Detroit, 355 U.S. 466, 474, 78 S.Ct. 474, 478-79, 2 L.Ed.2d 424 (1958):
Wise and flexible adjustment of intergovernmental tax immunity calls for political and economic considerations of the greatest difficulty and delicacy. Such complex problems are ones which Congress is best qualified to resolve.
In no area has the Court more consistently deferred to Congress than in the many eases dealing with state and local taxation of banks and other lending institutions chartered or established under Federal law. See First Agric. Nat’l Bank, 392 U.S. at 341-46, 88 S.Ct. at 2174-77; Federal Land Bank v. Board of County Comm’rs, 368 U.S. 146, 82 S.Ct. 282, 7 L.Ed.2d 199 (1961); Federal Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941); Pittman v. Home Owners’ Loan Corp., 308 U.S. 21, 60 S.Ct. 15, 84 L.Ed. 11 (1939). Some of these cases referred to the doctrine of implied constitutional immunity, but all were decided on the basis of careful statutory analysis. In my view, it is that principle of deference to the legislature that should guide us, not this court’s potentially mischievous dictum in prior eases to the effect that “Congress must express a clear, express, and affirmative desire to waive” the implied constitutional immunity, supra p. 5. With that essential preamble, I turn to the intricacies of the statutes here at issue.
The Farm Credit System is a nationwide network of borrower-owned cooperative lending institutions intended to serve the unique credit needs of the agricultural sector. See H.R.Rep. No. 425, 99th Cong., 1st Sess. 5 (1985), reprinted in 1985 U.S.C.C.A.N. 2587, 2591. The System began in 1916, when the Federal Farm Loan Act authorized the creation of twelve regional Federal Land Banks (“FLBs”). Pub.L. No. 64-158, § 4, 39 Stat. 360, 362 (1916). FLBs were to be partially owned and funded by the Federal government. Both the banks themselves, and their debt obligations, were given a broad statutory exemption from state and local taxes, except real property taxes:
[Ejvery Federal land bank ... including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank.... [Fjarm loan bonds issued under the provisions of this Act shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation.... Nothing herein shall be construed to exempt the real property of Federal ... land banks ... from either State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed.
Id. § 26, 39 Stat. at 380.
FLBs were only authorized to make agricultural loans secured by first mortgages on farm lands. In 1923, Congress created the Federal Intermediate Credit Banks (“FICBs”) to make other types of farm loans. FICBs received the same broad statutory tax exemption as FLBs. Pub.L. No. 67-503, § 210, 42 Stat. 1454, 1459 (1923). In 1987, Congress merged the FLBs and the FICBs into Farm Credit Banks. With minor changes in statutory language, Farm Credit Banks today enjoy the same statutory tax exemption first granted FLBs in 1916. See 12 U.S.C. § 2023.
This case involves Production Credit Associations (“PCAs”), first created by Congress in the Farm Credit Act of 1933 to provide short-to-intermediate-term loans directly to farmers and ranchers. See Pub.L. No. 73-98, § 20, 48 Stat. 257, 259-60 (1933). PCAs were initially capitalized and owned entirely by the Federal government, but Congress hoped (“expected” might be too strong a word given Depression-era economic conditions) that PCA excess earnings would be used to retire the government’s stock, result *966 ing in “local institutions in which farmers are participants and owners and through which necessary credit may be provided on a safe business basis and at reasonable cost.” S.Rep. No. 124, 73d Cong., 1st Sess. 2 (1933). Congress reflected that hope in the express but limited tax exemption granted PCAs in the 1933 Act:
Production Credit Associations ... and their obligations, shall be deemed to be instrumentalities of the United States, and as such, any and all notes, debentures, bonds, and other such obligations issued by [PCAs] shall be exempt both as to principal and interest from all taxation ... imposed by the United States or by any State, Territorial, or local taxing authority. [PCAs], their property, their franchises, capital, reserves, surplus, and other funds, and their income, shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property ... shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed. The exemption provided herein shall not apply with respect to any [PCA] or its property or income after the stock held in it by the [United States] has been retired_
Pub.L. No. 73-98, § 63, 48 Stat. at 267 (emphasis added). This is a very different exemption than Congress granted the earlier farm credit institutions, FLBs and FICBs. Congress did not explain why it linked the PCAs’ tax exemption to government ownership, and why it did not also impose that limitation on FLBs and FICBs.[1]
By the early 1960s, many PCAs were privately owned, and States began assessing various taxes, relying upon the last sentence of the above-quoted statute. Some PCAs resisted, claiming implied immunity as Federal instrumentalities. To my knowledge, every state appellate court to consider the question rejected the PCAs’ position, concluding that the Federal statute was express consent for state taxation of privately-owned PCAs. See, e.g., Baker PCA v. State Tax Comm’n, 245 Or. 352, 421 P.2d 984 (1966); Woodland PCA v. Franchise Tax Bd., 225 Cal.App.2d 293, 37 Cal.Rptr. 231 (Dist.Ct.App.1964); Montana Livestock PCA v. State, 143 Mont. 578, 393 P.2d 50 (1964); Columbus PCA v. Bowers, 173 Ohio St. 97, 180 N.E.2d 1, cert. denied, 371 U.S. 826, 83 S.Ct. 47, 9 L.Ed.2d 65 (1962).
By 1968 all PCAs were owned entirely by their borrower-members. See H.R.Rep. No. 593, 92d Cong., 1st Sess. (1971), reprinted in 1971 U.S.C.C.A.N. 2091, 2098. When Congress substantially rewrote these statutes in the Farm Credit Act of 1971, it left unchanged the differing exemptions granted to various System lenders. See Pub.L. No. 92-181, §§ 1.21, 2.8, 2.17, 3.13, 85 Stat. 583, 590, 597, 602, 608-09 (1971); H.R.Rep. No. 593, 1971 U.S.C.C.A.N. at 2107-13.[2] I suspect that PCAs operating under the 1971 Act routinely paid state and local taxes in the many States with statutes expressly taxing PCAs to the extent permitted by Federal law,[3] but the record in this case is regrettably silent on the point.
Congress again overhauled the farm credit statutes in 1985, responding to a crisis in the agricultural sector that threatened to bankrupt the System. See generally Colorado Springs PCA v. Farm Credit Admin., 967 F.2d 648, 650-52 (D.C.Cir.1992). Congress made the Farm Credit Administration a more independent regulator, led by a three- *967 member Board instead of a Governor. To conform the statute to this new agency configuration, prior references to the Governor needed to be deleted, including one that had been added to the last sentence of the PCAs’ tax exemption provision, § 2.17 of the 1971 Act. However, rather than simply delete this reference to the Governor, Congress deleted the last two sentences of § 2.17. See Pub.L. No. 99-205, § 205(e)(16), 99 Stat. 1678, 1705 (1985). What remained, with minor subsequent changes,[4] was the statutory tax exemption for PCA obligations quoted in footnote 1 of the court’s opinion, now codified at 12 U.S.C. § 2077.
This 1985 amendment deleted the express exemption that had been granted to a PCA and its income for so long as the PCA was Government-owned. The relevant Committee Report described this as merely a technical change. See H.R.Rep. No. 425 at 28-29, 1985 U.S.C.C.A.N. at 2615. Although more than the reference to the Governor was deleted, that is a logical explanation since there were no publicly-owned PCAs in 1985 eligible to enjoy the deleted exemption. But this court has now construed a seemingly innocuous technical amendment as instead conferring an implied grant of blanket immunity from state and local taxation. In other words, the court construes the repeal of a limited express exemption, for which no PCA remained eligible, as the grant of a far broader implied exemption. Indeed, depending upon how one applies opaque dictum in the last paragraph of McCulloch v. Maryland, 17 U.S. (4 Wheat.) at 436, the effect of this decision may be to exempt PCAs from state and local real property taxes, an exemption broader than any Farm Credit institution has enjoyed in the eighty-year history of the System.[5]
If normal principles of statutory construction are applied, it is obvious to me that the technical change intended by the 1985 amendments should not be construed as having the extraordinary substantive effect urged by the appellee PCAs. Because PCAs had no exemption from state and local taxation before the 1985 amendment (other than the exemption for their obligations), they should have no exemption under the statute as amended, 12 U.S.C. § 2077. But this court concludes otherwise, adhering — in my view blindly — to “no express waiver” dicta in earlier cases that discussed the implied constitutional immunity. This decision is illogical, and it is contrary to the overriding rule, grounded in constitutional and statutory principles, that defining the extent of federal instrumentality tax immunity is a quintessentially legislative task. Accordingly, I dissent.

. The other differences in wording between the exemptions granted to FLBs and PCAs may simply reflect an evolution in drafting. The PCA form of exemption, without the critical last sentence dealing with retirement of the government’s stock, is also found in the 1933 statute which created the government-owned Home Owners’ Loan Corporation. See Pub.L. 73-43, § 4(c), 48 Stat. 128, 130 (1933).

. Of the other System lending institutions, Federal Land Bank Associations currently have the same exemption as Farm Credit Banks, 12 U.S.C. § 2098, while Banks for Cooperatives, first created in 1933 along with the PCAs, continue to have the same limited exemption as PCAs, 12 U.S.C. § 2134.

.See, e.g., Ala.Code § 40-16-2; Ind.Code § 6-5-12; N.Y. City Inc. Bus. Tax § 31; N.C.Gen.Stat. § 105-102.1; S.D.Cod.Laws § 10-43-2.1; Tenn. Code Ann. §§ 56-4-401 — 03.

. This section was reenacted in the Agricultural Credit Act of 1987, Pub.L. No. 100-233, § 401, 101 Stat. 1568, 1633 (1987).

. The court creates this uncertainty despite a 1988 colloquy between a Member of the House of Representatives and the Member who had been Chairman of the House Committee on Agriculture in 1985:
Mrs. SMITH of Nebraska. Is it your understanding that although local governments are not given specific authority to levy property taxes on property owned by [PCAs], they are not prevented from doing so?
Mr. De La Garza. Mr. Speaker, I would inform the gentlewoman from Nebraska that that is the advice of our legal counsel and certainly consistent with my understanding of the [1985] conference.
134 Cong.Rec. H 462 (daily ed. Feb. 23, 1988). Although postenactment views of individual legislators are not usually reliable indicators of legislative intent, the House in 1988 was considering whether a farther technical amendment was needed to clarify that PCAs, like all other Farm Credit System banks, are subject to real property taxation. So this colloquy is quite persuasive support for my interpretation of the 1985 amendment.